## GOODMAN *VS.* MUNKS.

1. Personal contracts are to have the same obligation, force, validity and interpretation in every country, which they have in the country where they are made or are to be executed.

2. (But the courts of no county are bound to enforce or hold valid, any contract injurious to its own rights, or those of its citizens; or which offends public morals, or violates public faith.)

3. Remedies for the enforcement of contracts, or to obtain compensation for a breach, are to be regulated and pursued according to the *lex fori*, and not the law of the place where they are made or are to be executed.

4. The nature, validity, construction and effect of contracts, are to be ascertained by the *lex loci contractus*, and that law is considered as much a part of the contract, as if it were expressly inserted in it.

5. Statutes prescribing the time within which courts shall entertain certain actions, relate to the *remedy*, and a party seeking that *remedy*, must bring himself within the prescription, as limited by the *lex fori*.

6. (A plea of prescription affirmed by a judgment, operates as an answer to the right of action every where.)

7. The discharge of a contract, or a defence against it, in the place where it is made, is available every where.

8. The *legal* obligation of a contract is discharged, whenever the statute of limitations of the place where it was made, has run against it, and nothing remains, but a moral duty, which courts of judicature cannot coerce.

9. *It seems*, that if the *legal* right be gone, the contract is discharged, until it is re-affirmed, or in some manner recognized.

10. Prescription constituting a bar at the place of the contract, operates as a defence *extra territorium*—therefore,

Goodman *vs.* Munks.

11. Where one made a note in South Carolina, and remained in that State until the statute of limitations of South Carolina operated as a bar to a recovery on the note,—it was held that the bar created by the law of South Carolina, operated as an available defence to an action brought on the note in this State.

Error to the Circuit court of Mobile.

Assumpsit on a promissory note, tried before *Pickens*, J.

Plaintiff declared against defendant on a promissory note, to which defendant plead, that the note was made in South Carolina, and that defendant was a citizen of that State, more than four years after cause of action accrued on the note, and that by the law of South Carolina, all actions on any writing not a specialty, must be brought in four years, and not afterwards; and further that no action was commenced in that State within four years after the right of action accrued on the note, and that he did not promise within four years next after the right of action accrued, to pay the note.

To this plea, there was a demurrer and joinder.

The court sustained the demurrer, and judgment was rendered for plaintiff; to reverse which the writ of error was brought.

Upon the trial of the cause, the plaintiff gave in evidence a note, of which the following is a copy:

"Charleston, 31 May, (1825,) eighteen hundred and twenty-five. Four months after date, I promise to pay to the order of J. C. & C. Burckmeyer, seven hundred and nine 55-100 dollars, for value received.

(Signed,)                    DUKE GOODMAN, per Att'y,
                             JAMES A. MILLER."

It was further in proof, that the note was executed in Charleston, in the State of South Carolina; and that the

Goodman *vs.* Munks.

interest which such contracts bore in that State, was seven per centum per annum.

Plaintiff in error assigned:

That the court erred in sustaining the demurrer to defendant's plea.

*Campbell,* for the plaintiff in error.
*Stewart,* contra.

COLLIER, C. J.—The only question raised in this case is, whether, if persons residing in the same state, enter into a contract, in consideration of which, one stipulates by promissory note, to pay the other a sum of money at a particular day, and the promissor continues his residence within the state, until the statute of limitations of the *locus contractus* shall have operated a bar to a recovery,—can the maker of the note, who has removed to another state, when sued, avail himself of the prescription of the *lex loci contractus,* or shall the *lex fori,* in this particular, govern?

It is well settled, that personal contracts are to have the same obligatory force, validity, and interpretation in every other country, which they have in the country where they are made or are to be executed. This rule is of very early adoption, and recognised in all nations which cherish an enlightened jurisprudence. There is, however, an exception prevailing, coeval and co-extensive with the rule itself, viz—that the courts of no country are bound to enforce or hold valid any contract, which is injurious to its own rights or those of its citizens, or which offends public morals, or violates the

Goodman *vs.* Munks.

public faith.—(Le Roy, et al. vs. Crowninshield, 2 Mason's R. 151—Pearsall, et al. vs. Wright, et al, 2 Mass. R. 84— Medbury vs. Hopkins, 3 Conn. R. 472—Ruggles vs. Keeler, 3 Johns. R. 263—Andrews vs. Herriott, 4 Cowen's R. 508, and note 511, and cases there cited.)

It may also be considered an established rule of law, that remedies for the enforcement of contracts, or to obtain compensation for a breach, are to be regulated and pursued according to the *lex fori*, and not the law of the place where they are made or are to be executed. This rule rests upon clear and intelligible reasoning. Every nation institutes its own courts, prescribes their jurisdiction, and the time and manner of proceeding, with a reference to its own views of justice and propriety—its wants and usages, and the convenience of its citizens. All that international comity can claim under such circumstances is, that foreigners shall be entitled to the same judicial remedies as are afforded to citizens of the country.—(Cases cited above—Decouche vs. Savatier, 3 Johns. Ch. R. 190, 217—4 Cowen's R. 528, note, and cases there cited.)

In regard to the nature, validity, construction, and effect of contracts, as these are to be ascertained by the *lex loci contractus*, that law is to be considered as much a part of the contract, as if it were expressly inserted in it.—(Melan vs. The Duke de Fitzjames, 1 Bos. & Pul. 138—Mather & Strong vs. Bush, 16 Johns. R. 233.)

But while these general rules are acknowledged, their application, in the great variety of cases that arise, is often perplexing and difficult. The distinction between *construction* and *right*, on the one hand, and *remedy* on

the other, seem occasionally so refined as to run into each other.

That statutes, prescribing the time within which courts shall entertain certain actions, or contracts be sued, and wrongs redressed, relate to the *remedy*, and consequently, a party seeking that *remedy*, must bring himself within the prescription as limited by the *lex fori*, is a proposition which we need not gainsay.—(4 Cowen's R. 528, cases cited in note.)

While we admit authority thus to have settled the rule, where no statute has attached upon the cause of action, and perfected a bar—for *myself*, I am free to admit, that if this question were *res integra*, I should be apt to consider the limitation of the *lex loci*, as entering into and forming a part of the contract. The maker of a note must be supposed to have in view the prescription of the country where it is made, or to be paid, and to stipulate in reference to it, in the same manner as if it had been inserted in *hœc verba*—(Nash vs. Tupper, 1 Caine's R. 402—argument for plaintiff, and dissenting opinion of Mr. Justice Livingston.) This, however, is a mere intimation of what *my* opinion would be, in the absence of prior adjudication : the rule, qualified as we have stated it, rests upon authorities too numerous and respectable to be disregarded—and I acquiesce.

The question, whether the prescription of the place of the contract having completely run against the plaintiff, and extinguished his remedy there, we think may be considered independent of the influence exerted by statutes of limitation before the bar is perfected. The *locus contractus* is the place for the performance of a contract,

Goodman *vs.* Munks.

if it contemplate no other, and if its execution cannot there be coerced by reason of the supineness of the party entitled to its benefit, shall the courts of another country acknowledge its validity? The statute of South Carolina, so far as we can learn its terms from the plea, does not declare an extinction of the contract, but an extinguishment of the remedy only; yet we cannot conceive that this should materially influence its legal effect. The distinction between a *right* and a *remedy*, is well known in law—the former is dependent upon the stipulations of the parties, or their acts or omissions, while the latter is subject to legislative modification. Though the legislature be necessarily vested with this power, it cannot, under the pretence of modifying, abolish a remedy. A contract which cannot be enforced, though free from all objection to its validity, has no obligation in law: it is true, that there may be a moral obligation, binding *in foro conscientiæ*, but of this, courts of judicature can take no notice, except as furnishing an adequate consideration for a promise, or a sufficient authority to retain money paid on such inoperative contract. It is difficult to distinguish in principle, between a contract which has become extinct by the passiveness of him in whose favor it was made, and one, the *remedy* on which, has been lost from the same cause. In the one case, it is as if it had never existed—in the other, the *legal* obligation being gone, it cannot be coerced, but depends for its performance upon the sense of moral justice of the party originally liable—(2 Mason's R. 168, 169; Sturgis vs. Crowninshield, 4 Wheat. R. 122, *et post;* Smith vs. Mead, 3 Conn. R. 253; Hammet vs. Anderson, Ib. 304.)

8 P.                12

Goodman *vs.* Munks.

A defendant may or may not, at his election, plead the statute of limitations; yet, if he does, and it is found in his favor, it cannot be successfully urged that the defence shall not avail him every where. The plea is in bar, and not in abatement, and a judgment for the defendant would not merely defeat the particular action, but would operate as a perpetual barrier to any other proceeding founded upon the same cause. This point we should consider clear beyond controversy, but for what was said by Chancellor Kent, in Decouche vs. Savetier. In that case, the learned chancellor remarked: "The plea of the statute of limitations does not touch the merits of the contract. It merely bars the remedy in the particular domestic *forum*, and does not conclude the plaintiff in his own or any other foreign country. To render the matter of the payment, a *res judicata*, it is necessary that the grounds of the judgment should be the same— (Graham vs. Maxwell, 2 Dow. 314.) The reason of the *exceptio rei judicatæ*, is to prevent endless litigation and discordant decisions; and the reason has no application to such a plea."

Mr. Justice Livingston, in Nash vs. Tupper, takes a different view of the point. Speaking of a plea of the statute, he says: "The present defence is a perpetual bar to the action, and therefore involves in it the merits, and not a mere question of form." To the same effect is Mr. Justice Story's opinion in Le Roy vs. Crowninshield, where, treating of the effect of statutes of limitation, he observes: "If, on the other hand, they are considered as defences or bars, authorised to be made by the debtor, and at his option, they are no otherwise a regulation of

Goodman *vs.* Munks.

judicial proceedings, than any other legal bar set up by the debtor. They authorise a judgment of the court in his favor, as a perpetual bar of any suit. They literally go, therefore, *ad litis decisionem.*" Let these citations suffice to show that a plea of prescription, affirmed by a judgment, operates as an answer to the right of action every where.

If all remedy is gone, and the obligation of the contract, of consequence, extinct in the place where made, —shall its resuscitation be silently effected by the mere passage by the debtor, of a line which marks the boundaries of distinct governments? We are aware that there are authorities to which we are accustomed to yield a high respect, furnishing an affirmative response to this question. In Bulger vs. Roche, (11 Pick. R. 36,) it was held that the statute of limitations of a foreign country, cannot of itself be pleaded as a bar to an action in Massachusetts. In fact, the court considered it too well settled by its previous decisions, for the point to be again drawn in question, and that the *lex loci contractus* having operated an extinction of the remedy, would not exclude the prescription of the *lex fori.* To the same effect is Decouche vs. Savetier,'(3 Johns. Ch. R. 319;) Lincoln vs. Battelle, (6 Wend. R. 475;) and Williams vs. Jones, (13 East's R. 439)—In which latter case Lord Ellenborough said "There was no law or authority for saying, that where there is an extinction of the remedy only in the foreign court, that shall operate by comity as an extinction of the remedy here also."

This question is considered by Mr. Justice Story, in Le Roy vs. Crowninshield, with his usual research and

ability. In his opinion, the learned Judge remarks, that "payment or extinction, according to the laws of the place of the contract, is payment or extinction of the debt every where. Why not, then, the presumption of payment or extinction, conclusive every where else, when it would be conclusive at home? Why should a difference be made between the fact, and that which the law deems conclusive evidence of the fact? What is there in the principles of national comity, which forbids us to bind the parties by a rule or a prescription, which the laws of their country have made conclusive between them? If a foreign prescription may be given in evidence as proof of payment, (as in Scotland,) why may it not be pleaded directly as a positive bar?"

Again: "The statutes of limitation must be pleaded by the debtor, otherwise they are not available in his favor. The defence, in such case, is given to the debtor, against any action after the limited period. When that period is passed, if the parties are still within the State, all right of action is extinguished; and I can perceive no reason why the right to use that defence, good by his own laws, should not travel with the debtor into every other country. The policy of it is as strong as that of *exceptio rei judicatæ*. It is to put an end to litigation, and to save persons from continual exposure to stale demands." And further, in speaking of a debt barred by prescription, the learned judge says, that though there may be a moral duty on the part of the debtor to pay, "there is not, strictly speaking, any right in the creditor to claim payment, for the law has made the bar, if pleaded, an estoppel of the right. Such right is technically extinguish-

Goodman *vs.* Munks.

ed in contemplation of law by the presumption of extinction, until the debtor himself negatives the presumption by some act or omission. It is plain, therefore, that when the *remedy* is said to be extinguished by a prescription, and not the *right*, we are not to understand the term "right" in its technical legal sense, but merely as a moral obligation or claim in natural justice." The learned judge then says, that if the question were entirely new, and he was called on to settle it upon principle, the inclination of his mind would strongly lead him, among other propositions, to adopt the following, viz. "That where all remedies are barred or discharged by the *lex loci contractus*, and have operated on the case, there the bar may be pleaded by the debtor in a foreign tribunal, to repel any suit brought to enforce the debt. That where all remedies are barred by the *lex loci contractus*, there is a virtual extinction of the *right* in that place, which ought to be recognized in every other tribunal, as of equal validity—that if the prescription by the *lex loci contractus* be longer than that of the *lex fori*, the latter may be pleaded in bar to a foreign contract, if it applies to foreign contracts; and that this does not on principle suppose, that the foreign prescription may not also be a well founded bar to the suit." The learned judge, however, considered the question *then in judgment*, settled, so far as it could be by authorities, which the court was bound to respect. It must be observed, in that case, the law of the place of the contract had not completed a bar, before the defendant removed to another State, and though we are informed what was the opinion of the court upon principle, yet as the facts did

not render necessary a decision of the question now before us, we do not learn whether that question was supposed to be concluded by authority.

In Woodbridge vs. Austin, (2 Tyler's R. 364,) it was decided, that where a demand is barred by the laws of a foreign country, where the contract was made, it cannot be revived by transferring it to an inhabitant of Vermont. And in Towns' ex'or vs. Bardwell, adm'r, (1 Stew. & Por. 36,) Chief Justice Lipscomb, in delivering the opinion of the court, employs this language: "But in acknowledging the generality of the rule, that the statue of limitations applies to the remedy and not to the right, we wish not to be understood as committing ourselves, to sustain the rule to the full extent that has been claimed for it by some eminent jurists. We in this case only decide, that if the bar has not become perfect, the statute does not affect the right. If, however, the statute had interposed, and perfected a bar to a recovery before the parties removed from the jurisdiction where the contract was entered into, some of us, at least, would pause and hesitate much, before we would set aside that bar and open the remedy to the enforcement of the contract."

In maintaining a bar, by prescription, to be operative in every country in which the debtor may chance to be found or remove, we think the harmony of the law is best preserved. It has been held, that detinue may be maintained upon the mere ground of a previous possession, originally acquired without force or fraud, and enjoyed for a sufficient length of time to make the statute of limitations an available bar. So, it has been decided, that where possession of personal property has been ad-

Goodman *vs.* Munks.

versely holden in one State, for a period beyond that pre-scribed by the laws of that State, and after that period has elapsed, the possessor removes into another State, which has a longer period of prescription, or is without any prescription, the original owner cannot successfully assert a title in the latter State against the possessor—(Newby's adm'r vs. Blakey, 3 Hen. & Munf. R. 57; Garth's ex'ors vs. Barksdale, 5 Munf. R. 101; Carter, et al. vs. Carter et al. Ib. 108; Travis vs. Claiborne, Ib. 435; Brent vs. Chapman, 5 Cranch's R. 358; Shelby et al. vs. Guy, 11 Wheat. R. 371; Beckford et al. vs. Wade, 17 Vesey's R. 88; Gregg vs. Bigham, 1 Hill's Rep. 299; Kegler vs. Mills, 2 Mar. & Yerg. R. 174; Partee vs. Pad-get et al. 4 Yerg. R. 174; Hardeson vs. Hays, 4 Ib. 507; Thompson vs. Caldwell, 3 Litt. R. 136; Stanley vs. Earl, 5 Ib. 281; Cook vs. Wilson's adm'rs, 6 Ib. 437; Orr et al. vs. Pickett, 3 J. J. Marsh. R. 268; Middleton vs. Carroll, 4 J. J. Marsh. R. 143; Smart vs. Baugh, 3 J. J. Marsh. R. 363.) It is indeed difficult to conceive why a statute bar to the recovery of a debt should not be as potent for the debtor, as a similar presciption is for the possessor of personal property. The statutes applying to the latter case do not declare an extinction of title, but like those relating to the former, merely extinguish the *right of action.* It is, then, difficult in principle, to conceive why, if the *lex loci* is allowed as a bar in the one case, it should not be held an absolute discharge in the other. Mr. Justice Story, in his *Conflict of Laws,* intimates very clearly, that the cases are not distinguishable in princi-ple—(page 488.)

The statutes of limitation have sometimes been assim-

Goodman *vs.* Munks.

ilated to laws, by which the person of an insolvent debtor is freed from a liability to imprisonment, while the obligation of the contract remains in full force against his future acquisitions. The analogy we do not think entirely just—in that case, the discharge does not extinguish every remedy of the creditor, but without pretending to interfere with the contract, it merely deprives him of one, and that the least valuable remedy. This being the case, foreign courts have refused to recognise an extinction of the remedy against the person. We think the question now before us may more aptly be likened to a discharge under the bankrupt laws of a foreign country. In that case, the certificate of the bankrupt is considered as effectual every where, as it is in the country where obtained. The *moral* obligation to pay his creditors so much of their demands as remains unpaid, is binding upon the bankrupt *in foro, conscientæ*, while the *legal* right of the creditor is gone—(Potter vs. Brown, 5 East's R. 129; Hunter vs. Potts, 4 T. R. 182; Bamford vs. Burrell, 2 Bos. *&* Pul. R. 11; Matson vs. Medex, 1 B. *&* A. Rep. 121; Harley vs. Greenwood, 5 Ib. 95; 4 Cowen's R. 514, 515, note.) And as the statute of limitations cannot be given in evidence, so neither can a bankrupt's certificate of discharge, but it must be pleaded—(Gowland vs. Warren, 1 Camp. R. 363; Stedman vs. Martinnant, 12 East's R. 664; Harris vs. James, 9 East's R. 82; Joseph vs. Orme, 2 N. Rep. 180.)

It is an undeniable principle of law, that the discharge of a contract, or a defence against it, in the place where it is made, is available every where. Thus, if infancy will avoid a contract by the *lex loci*, the same effect will

Goodman *vs.* Munks.

be accorded to it wherever the contract is sued.—(Thompson vs. Ketcham, 8 Johns. R. 189; Male vs. Roberts, 3 Esp. R. 163. To the same effect, see Warder vs. Arell, 2 Wash. R. 282, *et post;* Searight vs. Calbraith, 4 Dall. R. 325; Vermont Bank vs. Porter, 5 Day's R. 316; Bartsch vs. Atwater, 1 Conn. R. 409; Anon, 1 Br. Ch. R. 376.) And in Blanchard vs. Russell, (13 Mass. R. 1,) the court say, that personal contracts are subject to all the *consequences* attached to contracts of a similar nature by the laws of the country where they are made, if the contracting party is a subject. or resident in that country where it is entered into, and no provision is introduced to refer it to the laws of any other country. Now, we have already shown that the *legal* obligation of a contract is discharged, whenever the statute of limitations of the place where it was made has run against it, and nothing remains but a moral duty, which courts of judicature cannot coerce. If the *legal* right be gone, it would be more proper to consider the contract as discharged until it is re-affirmed, or in some manner recognised. And prescription constituting a bar at the place of the contract, we think, should, upon principle, be regarded as a defence, *extra territorium.*

We incline to the opinion, that direct authority preponderates against the conclusion to which we have attained. But as the *precise* question now before us, does not appear to have been often considered, either in England or in the States of the Union, we do not consider precedent so overwhelming as to foreclose our enquiries. Besides, it is worthy of remark, that the more recent adjudications upon the statutes of limitation, are tending to

8 P.          13

unsettle and overrule many of the previous decisions, which had gone far to impair and abrogate the wholesome provisions of well-intended and beneficial laws.

To conclude, we think the plaintiff's plea, which relied on the statute of South Carolina, the State in which he made the note in suit, and in which he resided until the statute completed the bar, interposed an available defence.

The Circuit court consequently erred in sustaining the defendant's demurrer to that plea, and its judgment must be reversed, and the cause remanded.