■'•Chief Justice Robertson
delivered the Opinion of the Court.
In September, 1833, Bernard’s executors obtained a judgment against William Chiles, for a female slave Esther and her son William, or their value, and damages assessed in an action of detinue, commenced on the 20th of August, 1826. This Court having affirmed the judgment, Chiles, afterwards, on the 13th of June, 1835, enjoined it by a bill in cjiancery; and his injunct-on having been dissolved, on the 7th of July, 1836, a scire facias was issued on the 20th of August, 1836, for obtaining a judgment for execution, and also for ascertaining the value of five children alleged to have been borne by Esther, between the commencement of the original action and the date of the judgment therein, and of two other children alleged to have been borne by her since the date of the judgment, and for obtaining, also, a judgment for execution therefor.
A judgment for a female slave is conclusive evi - deuce of tberight to any children which may have been born of her /' after the con; niencementofthe action; but does not include or emb-ace any of her children, except such as are born so soon after the rendition of the judgment, ■ as to show that, at the time when it was rendered, the child (mum-ire sa mere) was then in fact a part of the mother. Consequently, a judgment upon a ■ sci. fa. to have execution of a judgment in det-inue for a female slave, cannot be extended to any of her children, ■ except- one ( or more)which,tho’ unborn, was in existence, at the time of the judgment for the mo--ther, and included in it, as part of the mother.—
To ascertain the-value of, -óc iiave ex on for, such child afterwards horn, a sci. fa. may be main ■ tained.
In detinue for slaves , one of those recovered was a woman who had 5 children while the action was pend ing,andtwo more while the judg t was suspended by an appeal and , by an injunction; ' after the judg’t was affirmed and the injunction dis solved, a sci.fa. was sued out to ascertain the val ue of the child ren, and have ex ecution for them: held, that for one of the children which was born within a month after the judg’t was rendered, the sci. fa. may be maintained, and is necessary in order to havethat child and its val ue included in the ex’on; but as to the others , as none of them were included in the judg’t for the mother,there can be no judg’t for them upon the sci.fa. For them the only remedy is an original action.
*19 The Circuit Judge having sustained a demurrer to the scire facias, that decision is now to be revised.
As the scire facias is in proper form, and' suggests no fact tending to show that, either death or lapse of time rendered such a procedure necessary or proper, there can be no doubt, upon the facts exhibited in the record, that execution might have been issued for Esther and William, after the dissolution of the injunction, and that, therefore, as to them alone, a scire facias could not be maintained. But, nevertheless, we shall proceed to consider the more radical and important question which, as we presume,was alone intended to be presented; and that is, whether the scire facias can be sustained, either for the pretermitted children born before judgment, or for those born afterwards.
Upon a question so interesting and rave, some direct authority would have been peculiarly acceptable to the Court. But our researches having failed to afford, us any such aid, we must be content with such an opinion as reason and analogy may seem to authorize.
1 According to the common law, a scire facias on a; judgment, was inapplicable to any case in which an execution, or original action, could be maintained on the judgment. A statute of Westminster 2, 1 Ed. I. extended it to such judgments, also, as could not be enforced by execution without some supplemental judgment. Being a judicial writ, founded on some record, and prosecuted only to- avoid or enforce letters patent, judgments, and recognizances, or quasi judgments, a scire facias cannot be maintained in this case, for any other purpose than to enforce the judgment for Esther and William, so. far as it could not be otherwise enforced by execution; and cannot, therefore, be availably applied to any thing, not embraced,, either expressly or constructively, by that judgment.
The judgment for Esther, if founded on the absolute title to her, is conclusive" as to the right of the executors to such of her children as were born pendente lite, and between judgment and satisfaction. But a judgmént for the plaintiff, in an action of ejectment, is - also conclusive as to his title from the date of the demise in his *20 count; yet, he cannot maintain a scire facias for mesne profits, because the judgment did not include them.
For each child of a female slave held adversely to a party having a superior title, a cause of action accrues at the birth; and at the same instant,any statute of limita lions that will bar the action , commences running ; and the fact, that, at the time of the birth, an. action was pending for the mother , would be no answer to a plea of the statute; nor would a judg’t, in such action , for the mother, be any bar to any action for the child • — ■ though it would be conclusive as evidence of the right.
*20 The only question in this case, therefore, is whether the judgment for Esther constructively embraced any of her children'born .after the commencement of the action of detinue for her. If it did not, execution cannot be obtained upon it for any of them; and certainly it is not maintainable for the purpose of obtaining an original judgment for them, however conclusive the existing judgment for their mother may be admitted to be as to the fact of title to them.
It is our opinion that the judgment for Esther, or her assessed value, cannot be deemed a judgment also for any one of her children not in ventre sa mere at the time when it-was rendered. The suit was for her and William only: the judgment was only for them. If, when they obtained the judgment for Esther, the executors might, by any incidental proceeding and proof, have obtained an express judgment also for such of her children as were born during the pendency of the suit, the fact that they might have done so, but did not, would prove that the judgment for her does not include them; and if, in the action for her, an express judgment could not have been rendered for. them, the law would certainly not imply that the judgment for her embraced them also. Had Chiles, during the pendency of the suit for Esther, sold those children to a bona fide purchaser— without notice that they were her children, or had been born'pendente lite, or that the executors would ever claim them, or would not elect to sue for them in trover, or to accept their conventional value — would the lis pendens for her alone have concluded the right of such a purchaser? Or could the suit for her have been deemed constructive notice that they were her children, and had been born since the commencement of the suit for her? And, for each of those children, as any one of them was born, did not a right of action, eo instanti, accrue, and might not the executors have brought an action of deti-nue, or of trover, at their election? And did not the statute of limitations, at the same instant, commence running against each of those distinct causes of action? *21 Had separate suits been brought for those after-born children, could the pendency of the suit for their mother have been pleaded in abatement? or could the judgment for her be now pleaded in bar of any suit which might hereafter be brought for any of i/iem? And if any such suits should be hereafter instituted, could the effect of the lapse of time, if relied on in the defence, be avoided by showing that a suit had been brought and a judgment obtained for Esther?
It seems to us that the plain answer to these questions implies, necessarily, that the suit for Esther was not a suit for her children borh during the pendency of it, and consequently the judgment for her was not, either in fact or in law, a judgment for them.
Similar reasons conduce to the same conclusion respecting the child conceived and born after the date of the judgment for Esther. That child was not, in any practical or intelligible sense, a part of Esther when the judgment was rendered for her; nor could the jury, in assessing her value, have contemplated the' contingent value of any such prospective offspring. An action of detinue or trover might yet be maintained for it; and, in such an action, the only legal effect to which the judgment for Esther would be entitled, would be that of conclusive evidence of the fact of title in the executors, unless their right had been divested by contract or by time. And it seems clear to us that, a satisfaction of the judgment for Esther, by execution or otherwise, could not affect the right of the executors to this child, for whom they have had, from the moment of birth, a separate and independent cause of action.
The judgment for Esther was, it may be admitted, a judgment for all her natural capacities. But her capacity for child-bearing should have no more influence in extending the judgment for herself to the child conceived by her after the date of it, than her capacity for productive labor should have in extending the judgment to the avails of her services between the date of it and execution upon it. As to this child, and the children borne by Esther between the commencement of the action and the judgment, it seems clear to us, that the *22 maxim transit in rem judicatmn does not apply. If Bernard’s executors had accepted the assessed value of Esther in discharge of their judgment for her, or her value, would not the judgment have been thereby satis- and discharged? And can it be believed that, by such a discharge of the judgment, the right to those children, as well as that to Esther, would have passed, by operation of law, to Chiles? In such a case, could the rule, soluiio pretii emptionis loco habetur, be even plausibly applied to any other slave than Esther herself? But, nevertheless, the satisfied judgment for Esther would alone be claimed as a virtual judgment for her children also; and which, after it had been discharged according to its own terms and legal effect, this scire fa-cias would be brought to revive and greatly expand, so as to make it embrace several other slaves.
It therefore seems to us that, as to the children born before and the child conceived and born after judgment, there is no foundation for a scire facias to have execution, and that an original action is the only allowable remedy.
It appears, however, from the scire facias, that one of the two children born after judgment was born within less than one month after the date of the judgment.— We may, therefore, presume to know judicially that, when the judgment for Esther was rendered, she was pregnant with that child, and that, in assessing her value, the fact of her pregnancy was considered by the jury and the assessment increased in consequence of it, to an extent corresponding with the then estimated value of the foetus in útero.
If, in an action of detinue for an old mare with foal by a celebrated horse, and valuable chiefly for the foal, the plaintiff recover a judgment for the mare, or for one thousand dollars, assessed mainly on account of her gravid condition, can it be doubted that, if the colt should happen to be brought forth before execution or satisfaction, the judgment would still bind it?
It seems to us,' therefore, that the judgment for Esther, as she was, embracing, as it did, whatsoever of value then belonged to her and could have been considered a part *23 of herself, must be deemed necessarily a judgment for the living child then growing in her womb, and nourished by the same blood which animated her own existence; and, of course, that the subsequent parturition, Which affected a physical separation of parent and child, who were but one and undivided when the judgment was rendered for both as one, could not be considered as affecting also a legal separation of the child from the operation of the judgment.
And it does appear to us that, had the executors accepted, in lieu of their judgment for Esther, the sum assessed for her value as a gravid woman, they would thereby have passed to Chiles the title to the child as well as to the mother. A sale of Esther whilst pregnant would have passed the title to the child in her womb, though born before a delivery of possession; and the judgment for her should, we think, have the same effect.
We are therefore of the opinion that, the judgment for Esther had the legal effect of a judgment for the child with which she was pregnant when it was rendered.
In the case of Alderson vs. Biggars et al. (4th Hen. and Mun. 473,) it was said arguendo by a chancellor of Virginia, that, for a child born, and also conceived, as we infer, after an unexecuted judgment in detinue for the mother, an action of detinue or trover might be maintained by the holder of the judgment. It would appear, therefore, that the chancellor was of the opinion that the judgment for the mother did not include such an after-born child.
In Foster vs. Smoot (1 A. K. Marshall, 394,) this Court said that, upon a judgment in detinue for a female slave, an action of detinue could not be maintained for her and her after-born child. But the opinion of the Court does not intimate that the mother was pregnant at the date of the judgment; and if she had been then certainly pregnant with a living child, no action could, in our opinion, have been maintained for the child which could not have been maintained also for the mother. But we rather presume that the question we are now considering, was not examined or thought of by our predeces- *24 sorgj in deciding the case of Foster vs. Smoot. And whatever may be thought of the opinion in that case in other respects, we are satisfied that it should not be deemed an authority for any point to be decided in this case.
In Bro. title. Replevin, 41, and in 1st Sid. 82, it is said that, “ if a mare in foal, a cow in calf &c. are distrain- “ ed and they happen to bring forth their young whilst “ they are in the custody of the distrainor, a Replevin “ lies for the foal, calf &c.” and that doctrine implies that the taking of the pregnant mare, or cow, was a taking, also, of the foetal colt or calf. As it is well settled that whenever Replevin may lie for a tortious taking of movable property, trespass de bonis asportatis could be . electively maintained, for the same wrongful act, it is evident that, if replevin would lie for a child born after the caption of its pregnant mother, the taking of the mother must be deemed a tortious taking of such child also, merely because, at the time of the taking, the child was a part of the mother, and both then constituted but one, in judgment of law; for it must be admitted that neither trespass nor replevin could be maintained for a child, both conceived and born whilst the mother was in the possession of a person who had taken her tortiously from the true owner.
Consequently, a judgment for a pregnant female slave, must be, in effect, a judgment operating upon her child after, as well as before, the birth. And therefore, if, in virtue of an execution on tlje judgment for Esther, the officer had taken her child born only about a month after judgment, he would not have bpen a trespasser.
But as there was not, and could not have been, an express judgment for that identical child, and as final process on the judgment must conform to the style of the judgment, no execution could have been issued for that child on the judgment for the mother; and, of course, it would not have been the duty of the sheriff to take the child as well as the mother, on an execution for the latter only, but a supplemental judgment ex-presly authorizing execution for the child would have been necessary for compelling a submission to the ori *25 ginal judgment to the full extent of its comprehensive legal effect. And therefore, and the more especially as the application of the judgment to the child depends on extraneous facts, a scire facias is, in our opinion, an appropriate, and the only effectual proceeding for ascertaining those facts, and for obtaining thereon, an explicit and express judgment for execution for such child, or for its value, to be separately ascertained and assessed so as to coerce submission.
That more is demanded by a sci. fa. than can be obtained, is' not a fatal objection to it, of which advantage can be taken by demurrer.
As, then, a scire facias may be maintained for the child first born after the judgment for Esther, the only remaining question is whether, as the writ in this case, though it described the judgment correctly, seeks execution for slaves for whom no judgment for execution can be obtained in such a mode, the Circuit Court erred in sustaining the demurrer to it. And it is our opinion that the Circuit Judge did err in sustaining the demurrer; because the only ground of the demurrer was, not a misrecital or misjoinder, but the fact that the writ claims more than can be obtained. And therefore, as the scire facias is good, and maintainable to some extent, we are of the opinion that the Circuit Judge ought to have overruled the demurrer to it, just as he would overrule a demurrer to a declaration in detinue, for several slaves as to all of whom, except one, the count itself shows that there is no cause of action.
Wherefore, it is considered that the judgment of the Circuit Court be reversed, and the cause remanded,