Lipscomb, J.
Tho refusal of the court to grant a new trial is assigned for error. On looking into the statement of facts it will be seen that as to the mode in which the appellants acquired possession of the slave sued for there is little or no conflict in the testimony. It is in evidence she wont into the possession of McHenry Winhurn, tins former husband and testator of Mrs. Robinson, before the year 1842, by a loan from the brother of Mrs. Robinson, Jeremiah Cochran ; that she remained in the said possession of Winhurn until some time in the year 1847, when the said Winhurn died testate, making his wife (Lucy A.) and J. L. Hill his executors; that she was taken possession of by the executors shortly after the death of Winhurn as a part of his property, and so continued down to about the 19th July, 1851, when she was clandestinely taken by the defendant, Thomas Cochran, in the night time. For the defence it was in evidence that Jeremiah Cocí trail died in 1843 or ’44, and Tliomas Cochran administered on his estate. And one witness swore that she, the slave, was sent to the administrator to be appraised. Whether the *63 statute of limitations commenced running- anterior to the time of the death of Winburn, need not be discussed, as there can be no doubt from the evidence that from that time the possession was adverse and the statute commenced running-, and, fixing on that period for its commencement, it liad completed the bar'before the. slave was captured by the defendant. The evidence of Hill and Kaller is conclusive on this subject, and it is not, in the slightest degree, controverted by 1 lie other witnesses.
Note 20. — Thurmond v. Trammell, 28 T., ST1. As to title to real estate acquired by limitation, sou Cunningham v. Frantzen, 26 T., 34; Moody v. Holcomb, 26 T., 714.
It. was however contended by the defendant that the statute docs not give a right; that it only interposes a bar to a recovery, which may bo exemplified in this way: if defendant-, instead of taking the negro clandestinely, had sued Robinson and wife, the statute would have been a bar to his recovery; but as he had recapt urod her, no matter how reprehensible t lie means resorted to. the statute would not now operate against him. Strange mode of reasoning ! — that the statute- could be defeated by such unjustifiable means ! But, strange as it is, it at one time, received judicial countenance in the courts where the common law formed the body of jurisprudence. Their maxim was that the statute could be used as a shield of defense but not as a sword to assail. This doctrine lias, however, been overruled, so far as the statute applies to personal property, or property capable of being- moved from place to place; and it lias so often been so l-iilecl by the highest judicial tribunals of the land that the statute, when tlie bar becomes complete, not only bars the remedy but vests the right in a slaw, which right could be set up and sustained in the courts of any other State where the slave should have been moved after such bar had been completed, that it is not now to be questioned. And it may safely be said that this has boon the rule of decision in all of the southern and western States for nearly a half century. It has been repeatedly so held in Virginia, North Carolina. South Carolina, Tennessee, Kentucky, and Louisiana.
This has always been the rule of the civil law, and oue of the modes by which property can he required is by prescription according to that system. In England, when the first statute was enacted, personal property was not held in very high estimation, and it was not, with the exception of merchandise, used in commerce, often the subject of trafile; and the policy of the statute was supposed to embrace contracts for money or possessory actions for real property. It is, however, with us greatly different. The value of personal property in the South vastly exceeds that of the landed, and as to personal property, we form our first impressions of ownership from the possession, and the personal property in possession is sure to gain to its possession some credit; it is sold and conveyed from hand to hand without any other formality than delivery; therefore possession is looked upon as evidence of title. Not so with lauded property. The records of the court will always disclose who are its true owners. But the rule is too firmly established to excuse discussion. There was no conflict as to the possession of the executors of ’Wmburn, and the verdict was clearly not only against the evidence but contrary to the law as applicable to the facts proven, and the court below erred in overruling the motion for a new trial. The judgment is reversed and the cause remanded.
Reversed and remanded.