McKinney, J.,
delivered the opinion of the Court.
The complainant, Elizabeth, is the only child of David A. Barton, who died in Texas, in December, 1844, leaving the complainant, his only distributee, then an infant of about eleven months old.
This bill was filed originally, in the name of her next friend, to recover two slaves, named Henry and Mack, claimed to have been the property of said D. A. Barton, who died intestate.
The allegations and proof, in regard to the ownership of said slaves, by David A. Barton, is contradictory. For the complainants, it is alleged, that Joshua Barton, the father of David A., made a parol gift of the slaves to him. The defendants deny the gift, and allege, that the slaves were merely loaned by the father to his son, for the period of two years, at the expiration of which time they were to be returned.
*452 The proof shows, that in September, 1 842, the intestate, David A., whose residence was in Texas, was on a visit to his father’s family, who resided in Cannon County, Tennessee, and that, about to return home, Joshua Barton, his father, placed said two slaves in his possession, to take with him to Texas; that he did take them with him to his home, in Texas, where he arrived about the 15th of October, 1842; and that he retained possession of the slaves, and claimed them as his own property, from that date, until his death, which happened on the 20th of December, 1844, being a period of more than two years; and that after his death, they came into the possession of the administrator of his estate, who delivered them into the custody of the guardian of the complainant, with whom they remained, until November, 1845, when by the procurement of Joshua Barton, they were •enticed away and brought to Tennessee, and taken possession of by Joshua Barton, who claimed them as his property; and who, shortly afterwards, delivered the slave, Mack, into the possession of his son-in-law, the defendant, Ramsey, who still has him in his possession ; and at a later period, he disposed of Henry, to his son, the defendant, William, who still retains him.
Joshua Barton died in the Spring of 1858, the defendant, William, is the personal representative of his ■estate, and the other defendants, are the legatees and devisees under his Will.
We do not deem it necessary to comment upon the conflicting testimony, in detail, with the view of sustaining our conclusion as to its effect. Suffice it to say, that upon a review of all the evidence, and more especially the declarations of Joshua Barton, as proved by *453 Stokes and Farmer, at the time the slaves were brought back from Texas, in November, 1845, the preponderance of the proof, in our opinion, is, that the transaction was a gift, and not a loan, of the slaves, by Joshua Barton, to his son, David A.
This brings us to the question of law, arising upon the facts stated; namely: Whether or not, under the Statute of Limitations of Texas, David A. Barton acquired such a title to the slaves, as will entitle the complainants, suing in his right, to recover them in the Courts of this State.
By the Statute of Texas, suit must be commenced, in a case like this present, “ within tiuo years, next, after the cause of such action, or suit, and not after:” See Hartley’s Dig., Art. 2377 ; and this Statute “applies no less to foreign than to domestic claims:” Ib., Art., 2398.
In the construction of this Statute, it has been declared by the Supreme Court of that State, that its effect is, not only to bar the rights of action of the former owner, but also, to extinguish his right; and to vest the right of property absolutely in the adverse possession, so that if, after the bar, had been completed, the former owner should regain the possession, the possessor might maintain an action against him for the recovery of the property: See 9 Texas Rep., 123.
For the defendants, it is insisted, that, inasmuch as by the Statute of this State, where the suit is brought, an adverse possession of three years is required to give title, under a void parol gift of slaves, our own law, and not that of Texas, must govern the decision of the case.
The counsel on both sides, refer to Story’s Conflict of *454 Laws, sec. 582; but they differ in their understanding of the import of that authority.
The counsel for the defendants, admit, that if both parties had been resident within the jurisdiction of Texas, during the whole period prescribed by the law of that State, to complete the bar, the title thus acquired by the possessor, might be set up by the complainants, in our Courts, in the present case, and a recovery of the slaves be effected by force thereof.
But, forasmuch as Joshua Barton was a resident of Tennessee, and not subject to the jurisdiction or laws of Texas, during the period the slaves were in adverse possession of David A. Barton, in that State, it is denied, that any such effect can be predicated of the Statute of that State. Mr. Story put this case: Suppose personal property is adversely held in a State, for a period beyond that prescribed by the laws of that State; and after that period has elapsed, the possessor should remove into another State, which has a longer period of prescription, or is without any prescription; could the original owner assert a title there against the possessor, whose title, by the local law, and the lapse of time, had become final and conclusive before the removal? It has certainly been thought, says the author, that, in such a case, the title of the possessor cannot be impugned.: See sec. 582, and cases referred to in note 2.
The case supposed above, as we understand the author, is, in principle, precisely the present case. Every sovereignty possesses the undoubted power to regulate the rights of property situate within its own jurisdiction.
It may limit all rights of action to certain prescribed periods, and may ordain that, after the expiration of the *455 periods thus prescribed, not only the right of action, but the claim or title likewise, shall be extinguished.
And if a positive title to property be then acquired, and perfected by the local law of the place, where situate at the time, upon what sound principle can it be maintained that such title can be affected or defeated by the removal of the property to another country, by the possesor, or by its removal by another, without his consent?
In such a case, can it be material -whether or not the former owner was resident within the jurisdiction, by whose local law the possessor had become vested with an absolute title to the property ? If it be said, that the former owner, by residing within the jurisdiction, during the period prescribed, voluntarily subjected himself to the operation of the local laws of the place, and therefore cannot complain that his right is taken away by those laws, as the result of his own laches, may] it not be said with quite as much reason, and force of argument, that, by knowingly suffering his property to be taken, and to remain within the jurisdiction, during the period prescribed by the local law, he thereby voluntarily subjected his property, and rights to the operation of such local laws?
In the latter case, as much as in the former, the loss of his right is the result of his own laches.
Our conclusion, therefore, is, that under the ■ law of Texas, the title of Joshua Barton — though not a resident of that State — was extinguished, and the title perfected in David A. Barton; and that the title thus acquired, may be set up by the complainants, in the Courts of this State, against those claiming the slaves, by *456 the subsequent disposition of them made by Joshua Barton.
Decree affirmed.