FRANCIS L. CHAPIN & another *vs.* MARY D. FREELAND.

Worcester. October 3, 1884; October 22, 1885. — September 8, 1886.

When the statute of limitations would be a bar to a direct proceeding by the original owner of personal property, it cannot be defeated by indirection within the jurisdiction where it is law. A title which will not sustain a declaration will not sustain a plea. FIELD, J., dissenting.

Two counters, which belonged to A., were, without his knowledge or authority, placed by B. in a shop built by him on his land, nailed to the floor, and used there. Four years afterwards, B. mortgaged the premises to C., who, eight years later, foreclosed the mortgage, and then sold the premises to D., making no mention of the counters. A., who two years subsequently first learned where the counters were, took them from D.'s possession. *Held,* that D. could maintain replevin against A. for the counters. FIELD, J., dissenting.

REPLEVIN of two counters. Writ dated November 14, 1881. Trial in the Superior Court, without a jury, before *Blodgett,* J., who allowed a bill of exceptions, in substance as follows:

There was evidence tending to show, and the judge found, that, in 1867, one Daniel Warner built a building upon his land in Oxford, and fitted up the same with shelving and counters, and designed the same for use as a store for the sale of general merchandise ; that the counters in controversy were put into the store by him, and were arranged for convenient use therein; that the same were nailed to the floor, and were used in said building ; that on January 2, 1871, Warner mortgaged the premises to Alexander DeWitt; that DeWitt died in 1879, and Charles A. Angell and William Newton were appointed executors of his will ; that in April, 1879, said executors foreclosed said mortgage by sale, under the power contained therein, and became the purchasers of the premises ; that, soon after such sale, Warner removed the counters from the building, and the executors regained possession of them, and put them back upon the premises, but did not nail or fasten them to the premises ; that afterwards the executors sold the premises to the plaintiffs, but did not make mention of the counters in their deed, nor speak of them in the sale ; and that the defendant took the counters from the premises occupied by the plaintiffs in 1881.

The defendant offered evidence tending to show, and the judge found, that she purchased these counters, with two others, in 1861; that they were built in Worcester and sent to her complete at Oxford, and placed in her store ; that they were heavy counters with black-walnut tops and heavy bases, with panelled front, supported by standards standing upon the floor, and were not fastened to the floor, but were kept in position by their own weight, and were used there until some time in 1866, when, the store being then occupied by a tenant, they were set on one side as not being adapted to the business for which such store was then used, and finally, with the knowledge and consent of DeWitt, were moved out of the building on to the street, and placed one upon the other ; that Warner took the counters from their place in the street, and put them in his store, as aforesaid ; that there were two mortgages on the defendant's store premises given some time previously to November 26, 1866, which were assigned to DeWitt on that day; that from that date, by agreement with the defendant, DeWitt, who was the defendant's

brother, had charge of said estate and of said counters for the defendant; that she never authorized him, or any other person, to dispose of the counters, and never herself parted with her property in them; that, soon after the counters were removed from her store, she missed them, and made inquiries for them, but failed to find them; and that, when she learned that they were upon the plaintiffs' premises, she took them away.

There was no other evidence than as above stated as to the means of the defendant of obtaining information as to where the counters were after they were taken from her store, or as to any concealment of the taking of the counters by Warner. It was in evidence, however, that the defendant, after 1861, resided some of the time in Oxford and some of the time in Sutton.

There was no evidence, except as before stated, tending to show what interest, if any, Warner claimed to have in the counters at the time they came into his possession, or at any time thereafter; and there was no other material evidence in the case applying to the rulings made or asked for at the trial.

The plaintiffs asked the judge to rule as follows: " 1. Upon the evidence, the counters, though attached to the store by one who had no title to them, became fixtures and a part of the realty, and passed to the mortgagee, and to the purchasers at the foreclosure sale, and came rightfully into the possession of the plaintiffs when they purchased the premises, as belonging thereto, though not then nailed to the building. 2. The defendant had lost the right to take the counters, if Warner had no right or title to them when he so took and attached them to the store building, such taking being a tort, and, as a cause of action, barred by the statute of limitations long before the defendant removed them in 1881, and therefore having no right to recover them, and nothing appearing sufficient to take the case out of the statute. 3. Upon the evidence and facts, as before stated, the plaintiffs, as matter of law, were entitled to maintain their action, and the facts in the case would not warrant a finding for the defendant."

The judge declined to rule as requested; and found for the defendant. The plaintiffs alleged exceptions.

*A. J. Bartholomew*, for the plaintiffs.

*J. Hopkins*, for the defendant.

HOLMES, J. This is an action of replevin for two counters. There was evidence that they belonged to the defendant in 1867, when one Warner built a shop, put the counters in, nailed them to the floor, and afterwards, on January 2, 1871, mortgaged the premises to one DeWitt. In April, 1879, DeWitt's executors foreclosed, and sold the premises to the plaintiffs. The defendant took the counters from the plaintiffs' possession in 1881. The court found for the defendant. Considering the bill of exceptions as a whole, we do not understand this general finding to have gone on the ground either of a special finding that the counters remained chattels for all purposes, and were not covered by the mortgage, *Carpenter* v. *Walker*, 140 Mass. 416, or that there was a fraudulent concealment of the cause of action, within the Gen. Sts. *c.* 155, § 12 (Pub. Sts. *c.* 197, § 14). But we understand the court to have ruled or assumed that, although the statute should have run in favor of Warner or DeWitt before the transfer to the plaintiffs, that circumstance would not prevent the defendant from taking possession if she could, or entitle the plaintiffs to sue her for doing so, if she was the original owner.

A majority of the court are of opinion that this is not the law, and that there must be a new trial. We do not forget all that has been said and decided as to the statute of limitations going only to the remedy, especially in cases of contract. We do not even find it necessary to express an opinion as to what would be the effect of a statute like ours, if a chattel, after having been held adversely for six years, were taken into another jurisdiction by the originally wrongful possessor, although all the decisions and dicta, so far as we know, agree that the title would be deemed to have passed. *Cockfield* v. *Hudson*, 1 Brev. 311. *Howell* v. *Hair*, 15 Ala. 194. *Jones* v. *Jones*, 18 Ala. 248, 253. *Clark* v. *Slaughter*, 34 Miss. 65. *Winburn* v. *Cochran*, 9 Tex. 123. *Preston* v. *Briggs*, 16 Vt. 124, 130. *Baker* v. *Chase*, 55 N. H. 61, 63. *Campbell* v. *Holt*, 115 U. S. 620, 623. What we do decide is, that, where the statute would be a bar to a direct proceeding by the original owner, it cannot be defeated by indirection within the jurisdiction where it is law. If he cannot replevy, he cannot take with his own hand. A title which will not sustain a declaration will not sustain a plea.

It is true that the statute, in terms, only limits the bringing of an action. But whatever importance may be attached to that ancient form of words, the principle we lay down seems to us a necessary consequence of the enactment. And a similar doctrine has been applied to the statute of frauds. *Carrington* v. *Roots*, 2 M. & W. 248. See *King* v. *Welcome*, 5 Gray, 41.

As we understand the statutory period to have run before the plaintiffs acquired the counters, we do not deem it necessary to consider what would be the law if the plaintiffs had purchased or taken the counters, within six years of the original conversion, from the person who first converted them, and the defendant had taken them after the action against the first taker had been barred, but within six years of the plaintiffs' acquiring them. We regard a purchaser from one against whom the remedy is already barred as entitled to stand in as good a position as his vendor. Whether a second wrongful taker would stand differently, because not privy in title, we need not discuss. See *Leonard* v. *Leonard*, 7 Allen, 277; *Sawyer* v. *Kendall*, 10 Cush. 241; *Norcross* v. *James*, 140 Mass. 188, 189; Co. Lit. 114 b, 121 b.

*Exceptions sustained.*

FIELD, J. I am unable to assent to the opinion of the court. As the case was tried without a jury, and the court found generally for the defendant, the only questions of law are those raised by the plaintiffs' requests for rulings, which were refused. The plaintiffs must prevail, if at all, upon their own title or right of possession. There was evidence that the defendant purchased the counters in 1861, and placed them in her store, where they were used until some time in 1866, when, with the knowledge and consent of DeWitt, the defendant's brother, they were moved out of the building to the street; that DeWitt, from November 26, 1866, held a mortgage upon the defendant's " store premises," and " from that date, by agreement with the defendant, had charge of said estate and of said counters ; " that, in 1867, Daniel Warner took the counters, without the defendant's knowledge or authority, and put them into his store, and nailed them to the floor, and mortgaged his premises to DeWitt on January 2, 1871; that DeWitt died in 1879, and this mortgage was foreclosed by a sale made by the executors of

DeWitt's estate to themselves in April, 1879, and they afterwards "sold the premises to the plaintiffs," not mentioning the counters in their deed; that the defendant, "soon after the counters were removed from her store, missed them, and made inquiries for them, but failed to find them; and that, when she learned that they were upon the plaintiffs' premises, she took them away," in 1881, and retained possession until the plaintiffs replevied them. "There was no evidence, except as before stated [in the exceptions], tending to show what interest, if any, Warner claimed to have in the counters at the time they came into his possession, or at any time thereafter." From the time Warner took the counters until he mortgaged his premises to DeWitt, six years had not expired; but, if it be assumed that Warner remained in possession until the mortgage given by him was foreclosed by a sale, he held possession more than six years. The possession of the plaintiffs could not have been for a longer time than about two years. If DeWitt was in possession from the date of the mortgage to him until his death, this was more than six years; but there was evidence that he was the agent of the defendant to take charge of the counters. The terms of the mortgage and conveyance under which the plaintiffs claim are not set out, but it has been assumed that they conveyed whatever title, if any, Warner had in the counters. It is manifest that, as between landlord and tenant, these counters would have been either furniture or trade fixtures, and that, if they were taken by Warner and affixed to his store tortiously, without the consent of the defendant, she could have retaken them. *Kimball* v. *Grand Lodge of Masons*, 131 Mass. 59. *Hubbell* v. *East Cambridge Savings Bank*, 132 Mass. 447. *Guthrie* v. *Jones*, 108 Mass. 191.

The rule that the title of personal property is lost by a wrongful conversion of it into some other species of property, or by making it a part of real estate, has its foundation in the impossibility or impracticability of tracing the property, or of severing it from the real estate; and when personal chattels are, without the consent of the owner, and without right, taken by another and affixed to real property, the title of the owner is not lost, unless the identity of the chattels has been destroyed, or they have been so affixed to the real property that it is impracticable

to sever them. See *Wetherbee* v. *Green*, 22 Mich. 311; *Jewett* v. *Dringer*, 3 Stew. (N. J.) 291. I think that the first request, therefore, ought not to have been given.

As the plaintiffs first took possession of the counters as their own some time after the foreclosure of the mortgage in 1879, the statute of limitations would have been no defence to them if the defendant had brought trover against them in 1881, when she took possession of the counters; their only defence would have been title in themselves derived from their vendors, and this title rests ultimately upon the possession of Warner. The second request, as applicable to the case, is in effect that, if Warner took the counters tortiously, and kept them attached to his building more than six years, the defendant lost her right of property in the counters. It is not stated in the request, that Warner's possession, to effect a change of title, must have been either known to the defendant or open and notorious, and must have been under a claim of right; and that his possession was of this character is not necessarily to be inferred from the evidence. The effect of the statute of limitations of real actions upon the acquisition of title to real property is carefully discussed in Langdell on Eq. Pl. §§ 119 *& seq.* Our statute of limitations of real actions provides that "no person shall commence an action for the recovery of lands, nor make an entry thereon, unless within twenty years after the right to bring such action or to make such entry first accrued, or within twenty years after he, or those from, by, or under whom he claims, have been seised or possessed of the premises, except as is hereinafter provided." Pub. Sts. *c.* 196, § 1. Gen. Sts. *c.* 154, § 1. Rev. Sts. *c.* 119, § 1. Sts. 1786, *c.* 13; 1807, *c.* 75. Commissioners' Notes to the Rev. Sts. *c.* 119. As writs of right and of formedon, and all writs of entry except those provided by the Pub. Sts. *c.* 134, were abolished by the Rev. Sts. *c.* 101, § 51, it follows that, with certain exceptions not necessary to be noticed, after a disseisin continued for twenty years, or in other words after twenty years from the time when the right to bring a writ of entry or to enter upon the land first accrued, the former owner of a freehold can neither maintain any action to recover possession, nor enter upon the land, nor, without an entry, convey it; and as all remedy, either by action or by taking possession, is gone, his title is

held to have been lost. The effect of the statute has been to extinguish the right, as well as to bar the remedy, and this is the construction given to the English St. of 3 & 4 Wm. IV. *c.* 27. Our statute of limitations of personal actions was taken from the St. of 21 Jac. I. *c.* 16, and this statute has been held not to extinguish the right, but only to bar the remedy. *Owen* v. *De Beauvoir*, 16 M. & W. 547; 5 Exch. 166. *Dawkins* v. *Penrhyn*, 6 Ch. D. 318; 4 App. Cas. 51. *Dundee Harbour* v. *Dougall*, 1 Macq. 317, 321. *In re Alison*, 11 Ch. D. 284.

Section 1 of the Pub. Sts. *c.* 197, declares: " The following actions shall be commenced within six years next after the cause of action accrues, and not afterwards . . . . actions of replevin, and all other actions for taking, detaining, or injuring goods or chattels." There is no statute, and no law, prohibiting the owner of personal chattels from peaceably taking possession of them whenever he may find them, and the technical law of seisin and disseisin was never applied to personal chattels. It is established in this Commonwealth that a debt barred by the statute of limitations of the place of the contract is not extinguished. The statute only bars the remedy by action within the jurisdiction where the defendant has resided during the statutory period. *Bulger* v. *Roche*, 11 Pick. 36. It was formerly contended that, if the parties to a contract had resided within the same jurisdiction so long a time that, under the statute of limitations there, the remedy by action was barred, this ought to be held everywhere to have extinguished the right of action, and thus to have extinguished the debt, especially if the residence was that of the place where the contract was made; and the courts of some jurisdictions so held. *Brown* v. *Parker*, 28 Wis. 21, 30. *Goodman* v. *Munks*, 8 Port. 84, which is overruled in *Jones* v. *Jones*, 18 Ala. 248. See *LeRoy* v. *Crowninshield*, 2 Mason, 151, 168. This view was, however, generally abandoned, and was never the law of this Commonwealth, of the English courts, of the Supreme Court of the United States, or of the courts of most of the States. A distinction was made in some of the Southern States between debts and chattels; and, in suits for the recovery of slaves, it was held that adverse possession for the statutory period of limitations of personal actions created a title. In some of the decisions, it is said that the possession must be *bona fide*,

and acquired without force or fraud, and must be peaceable and adverse. It was held, however, that, where there had been successive purchases of a slave, the possession of the successive purchasers could not be tacked, so as to create a title by adverse possession, because each purchase, if the purchaser took possession, was a new conversion; but such a title acquired by one person could be transferred to another. In some of these States, at the time of these decisions, it was also held that the statute of limitations of personal actions extinguished debts. *Cockfield* v. *Hudson*, 1 Brev. 311. *Howell* v. *Hair*, 15 Ala. 194. *Clark* v. *Slaughter*, 34 Miss. 65. *Winburn* v. *Cochran*, 9 Tex. 123. *Wells* v. *Ragland*, 1 Swan, 501. *Bryan* v. *Weems*, 29 Ala. 423. *Seay* v. *Bacon*, 4 Sneed, 99. *Bernard* v. *Chiles*, 7 Dana, 18. *Moffatt* v. *Buchanan*, 11 Humph. 369. *Newby* v. *Blakey*, 3 Hen. & M. 57. *Beadle* v. *Hunter*, 3 Strob. 331. See *Goodman* v. *Munks, ubi supra.*

In *Preston* v. *Briggs*, 16 Vt. 124, and *Baker* v. *Chase*, 55 N. H. 61, it was suggested that adverse possession of a chattel for six years transferred the title; but the cases did not require a determination of the question. In *Campbell* v. *Holt*, 115 U. S. 620, 623, there is an express declaration that " the weight of authority is in favor of the proposition that where one has had the peaceable, undisturbed, and open possession of real or personal property, with an assertion of his ownership, for the period which, under the law, would bar an action for its recovery by the real owner, the former has acquired a good title, a title superior to the latter, whose neglect to avail himself of his legal rights has lost him his title." The cases there cited are two of the slave cases which have been mentioned, and decisions of the Supreme Court of the United States relating to real property.

The law of the Supreme Court of the United States in regard to contracts was carefully stated in *Townsend* v. *Jemison*, 9 How. 407; and it was there held that, when the statute extinguished the right or title, and created a new one, this new right or title would be recognized by courts in other jurisdictions; but, if the statute only affected the remedy, the courts would afford the remedies provided by their own laws. Our decisions upon the effect of our statute of limitations upon debts or contracts uniformly hold that it affects only the remedy by action. *Bulger*

v. *Roche, ubi supra. Thayer* v. *Mann,* 19 Pick. 535. *Hancock* v. *Franklin Ins. Co.* 114 Mass. 155.

There is nothing in the statute which suggests any distinction between actions to recover chattels and actions to recover debts, and it does not purport to be a statute relating to the acquisition of title to property, but a statute prescribing the time within which certain actions shall be brought. There is not a trace to be found in our reports of the doctrine that possession of chattels for the statutory period of limitations for personal actions creates a title, and I can find no such doctrine in the English reports, or in the reports of a majority of the courts of the States of this country. The law concerning the acquisition of easements in real property by prescription, in its modern form, was established by the courts by adopting in part the Roman law, and by limiting the period of enjoyment necessary to create the right to the time required by statute for bringing actions for the recovery of land. *Edson* v. *Munsell,* 10 Allen, 557.

A right of way may be acquired by repeated trespasses, if they are openly made under a claim of right, and are uninterrupted; but twenty years' user is required, although the limitation for actions of tort in the nature of trespass *quare clausum* is six years. It was inevitable, perhaps, that, if a title to land could be acquired by adverse possession, a privilege or easement in land should be acquired by adverse use. By the Pub. Sts. *c.* 197, § 14, if a person liable to an action "fraudulently conceals the cause of such action from the knowledge of the person entitled to bring the same, the action may be commenced at any time within six years after the person so entitled discovers that he has such cause of action." This section has been construed strictly. *Nudd* v. *Hamblin,* 8 Allen, 130. Under this section, if one man stole another man's watch and carried it on his person as watches are usually carried, it might be held that the thief fraudulently concealed the cause of action from the owner; but if the thief sold the watch to one who purchased it in good faith, and he carried it in his pocket, this could not be held to be a fraudulent concealment; and, if the statute of limitations transfers the title, the owner, at the end of six years, would lose the title to his watch, although he may not have known or been able to discover who had it. The possession of personal chattels, even

although honestly held, is not always open and notorious, and if title to such chattels is to be acquired by possession, it ought to be by an adverse possession *bona fide* held under a claim of right, which was known to the owner, or so open and notorious that the owner ought to have known it. The second request does not assume, and it has not been found as a fact, that such was the nature of Warner's possession.

*Lamb* v. *Clark*, 5 Pick. 193, was assumpsit by an executor to recover money paid to the defendant by the makers of certain promissory notes which had been delivered, more than six years before the action was brought, to the defendant as his property, by the plaintiff's testator, as the consideration of a conveyance of land by the defendant to the testator's wife. The plaintiff contended that there was a fraudulent combination between the defendant and the wife of the testator, whereby the testator had been defrauded of his property. It was conceded by the court, that an action of trover might have been brought at any time within six years after the defendant received the notes, and that such an action was barred by the statute of limitations. The plaintiff, however, was permitted to recover all sums of money received by the defendant from the makers of the notes within six years before the commencement of the action. If the expiration of the six years had transferred the title of the notes to the defendant, it is difficult to see how the action could have been maintained.

*Wilkinson* v. *Verity*, L. R. 6 C. P. 206, was detinue by the church wardens of All Saints against the vicar, who, in 1859, having the custody of the communion plate, sold it for old silver. The church wardens discovered this in 1870, and then made a demand. The defence was the statute of limitations, and that the conversion occurred when the defendant sold the plate. The court say: "If this had been an action for damages for the conversion of the plate, in which the demand and refusal would have been only evidence of a conversion, it would have been impossible to contend that the date of the conversion could be excluded, or to deny that the defence upon the statute was sustained. Nor could the ignorance of the plaintiffs or their predecessors have prevented its operation." But the court held that the plaintiffs could elect to sue the defendant in detinue upon his

contract as bailee to deliver the plate on demand, and that "it is no answer for the bailee to say that he has incapacitated himself from complying with the lawful demand of the bailor."

These cases show that the statute of limitations of personal actions is construed with reference to the particular action brought, and indicate that there is no change of title in property, although the time for bringing an action of trover has expired. I think that the subject of the acquisition of title to personal chattels by adverse possession can best be dealt with by the Legislature, if it is thought necessary to establish such a rule of law ; and that it was not the intention of our statute of limitations of personal actions to extinguish rights or titles.

There is much force in the suggestion, that, if the defendant could not have recovered the counters by action at the time she took possession, she ought not to be permitted to take them from the possession of the plaintiffs by force or fraud ; but it is not found in the case that she took them by force or fraud, and the request does not assume this ; and I think that the defendant, at the time she took possession, could have recovered these counters of the plaintiffs by action, as the statute of limitations did not begin to run in favor of the plaintiffs until they took possession, which was at least as late as 1879 ; and it is not found that the plaintiffs' vendors had any title which they could convey to the plaintiffs. I think the second and third requests ought not to have been given.