GEORGE O. CURRIER *vs.* SAMUEL G. STUDLEY.

Suffolk.  January 19, 1892. — April 8, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Partnership — Suit between Partners after Dissolution — Statute of Limitations.*

A. and B., copartners as stockbrokers, were the owners of a seat in a stock
exchange, the seat standing in the name of B. The firm failed and was
dissolved in 1873.  Although there was no formal settlement of accounts
between the partners, it was agreed that the determination of the matter in
suit would settle the partnership affairs.  In 1888, B. sold the seat. *Held*, that
the statute of limitations was a bar to A.'s claim for a share of the proceeds,
and that the doctrine stated in some cases, that where specific articles belonging
to a firm are retained for more than six years after the dissolution of the part-
nership, and then sold by one of the partners, an action may be maintained by
the others for money had and received, did not apply.  FIELD, C. J., ALLEN &
MORTON, JJ., dissenting.

The defendant in an action to recover a share of the proceeds of the sale of a seat
in a stock exchange does not, in waiving the defence that the remedy should
be in equity, waive his right to set up the statute of limitations with the same
effect as if the suit were in equity, and the case stands as if the plaintiff had
sued in equity to enforce a trust against the proceeds of the sale, as he might
have done.

CONTRACT, to recover seven thousand dollars, being one half
of the amount received by the defendant from the sale of a seat
in the Boston Stock Exchange, an unincorporated association.
Trial in the Superior Court, before *Hammond,* J., who reported
the case for the determination of the Supreme Judicial Court,
in substance as follows.

The plaintiff and defendant were formerly copartners, doing
a business of commission stockbrokers.  The price of the seat,
which was one thousand dollars, was paid to the association by
the firm, but membership was taken in the name of the defend-
ant, the rule not allowing partnerships to become members.
At that time, membership was unlimited, and the seat had no
transfer value.

The firm failed in 1873, the plaintiff and defendant thereafter
doing no business together, but no formal dissolution or settle-
ment of the firm affairs was ever made.

In 1888, the membership in the Stock Exchange being limited and a seat having a transfer value, the defendant sold the seat for $14,000. Nothing was said between the plaintiff and the defendant about the seat from the time of the failure until after the sale by the defendant. The ownership, possession, and use of the seat were a privilege pertaining to the person of the member, and there was evidence that the use of this privilege while the partnership continued was worth much more to the firm than the sum paid for it; but there was no evidence that the defendant dealt with the seat afterwards otherwise than as his private property. There was undisputed evidence that, after the failure, the defendant, under a rule of the Exchange, in order to retain his membership, paid to the firm creditors who were members of the Exchange twenty-five per cent more of their respective claims than other creditors received. He made this payment from his own pocket, the plaintiff neither contributing nor being asked to contribute. The defendant from time to time afterwards paid assessments and fines in conformity with the rules of the Exchange, and for many years occupied the seat for the transaction of his private business only, without recognizing any right of the firm or of the plaintiff. The plaintiff claimed that there was a trust enforceable in favor of the firm after its dissolution.

The defendant waived the defence that the plaintiff's remedy was in equity, but pleaded the statute of limitations. The defendant also filed a declaration in set-off for money paid by the defendant to the plaintiff's use for assessments and contributions.

The judge directed a verdict for the defendant, and on the set-off for the defendant in set-off. If the plaintiff could maintain his action, both verdicts were to be set aside and a new trial ordered; otherwise, judgment was to be entered on the verdicts.

The case was argued at the bar in January, 1892, and afterwards was submitted on the briefs to all the judges.

*A. Hemenway*, for the plaintiff.

*L. S. Dabney & W. K. Richardson*, for the defendant.

KNOWLTON, J. Although the seat in the Stock Exchange at the time it was bought, and for a long time after the dissolution of the partnership, was not transferable, and could not be used

or in any way made available except by the defendant's personal occupation of it, the plaintiff contends that it was property in which the firm had a beneficial interest that continued after the dissolution, and that when it was sold the proceeds were assets to be divided between the copartners. The defendant contends that it was a mere personal privilege, which could not be the subject of legal or equitable ownership in another, and that there was no resulting trust in favor of the firm. He also argues, that, if there was a resulting trust, from the nature of the right and the use for which the seat was bought the trust which would be implied would be an obligation to use it for the benefit of the firm during the life of the firm, and not an undertaking to continue to use it for the benefit of his copartner after the dissolution of the partnership.

We do not deem it necessary to decide the questions arising in this part of the case, which are not free from difficulty, for we are of opinion that, if there was a trust enforceable in favor of the firm after its dissolution, this action is barred by the statute of limitations. The firm failed, and ceased to do business in April, 1873. Although there was no formal settlement of the accounts between the partners, the report states that the determination of the matter in suit will settle the partnership affairs, and it fairly appears that for nearly seventeen years from the close of the partnership business in April, 1873, until the last part of 1889, everything else relating to the partnership had been closed and treated as settled, and there had been no attempt by the plaintiff to have this seat disposed of or accounted for as a part of the firm's assets.

It is well settled that suits between partners to obtain an account and settlement of the affairs of the partnership are subject to the statute of limitations. It is a general rule in such cases that, in the absence of an express contract in regard to the matter, or of conduct of the parties which works an extension of the time for bringing a suit, the statute begins to run at the date of the dissolution. This is established in England as well as in Massachusetts and in most of the other American States. *Knox* v. *Gye*, L. R. 5 H. L. 656. *Noyes* v. *Crawley*, 10 Ch. D. 31, 39. *Farnam* v. *Brooks*, 9 Pick. 212, 242, 247. *Johnson* v. *Ames*, 11 Pick. 173, 182. *Allen* v. *Woonsocket Co.* 11 R. I.

288, 295. *McKelvy's appeal*, 72 Penn. St. 409. *Gray* v. *Kerr*, 46 Ohio St. 652. *Richardson* v. *Gregory*, 126 Ill. 166. *King* v. *Wartelle*, 14 La. An. 740. It is clear that, if this had been a suit to obtain the proceeds of this seat through an account and a settlement of the partnership affairs, it would have been barred at the expiration of six years from the termination of the partnership, or more than eleven years before this action was brought.

If it had been a suit to establish against the defendant a resulting trust for the benefit of the plaintiff, it would equally have been barred. Where a trust results by implication of law from the payment of the consideration for property conveyed to another, the statute begins to run in favor of the holder of the legal title against the equitable owner at the time of the conveyance if there is no recognition of the rights of the *cestui que trust*, and if his rights are recognized, then at the time when the holder of the title begins to hold adversely. Against an express trust the statute ordinarily does not run until there is an open disavowal of the trust, or some other breach of faith which may give rise to an action. There is a well recognized distinction between express trusts and resulting or constructive trusts in this particular. *Beckford* v. *Wade*, 17 Ves. 87. *Farnam* v. *Brooks*, 9 Pick. 212. *Ripley* v. *Bates*, 110 Mass. 161. *Harlow* v. *Dehon*, 111 Mass. 195. *Davis* v. *Coburn*, 128 Mass. 377. *Kane* v. *Bloodgood*, 7 Johns. Ch. 90. *Speidel* v. *Henrici*, 120 U. S. 377, 386. *Baxter* v. *Moses*, 77 Maine, 465, 481. *McClane* v. *Shepherd*, 6 C. E. Green, 76. *Prewett* v. *Buckingham*, 28 Miss. 92, 99.

On a question arising under the statute of limitations, the burden of proof is on the plaintiff. *Pond* v. *Gibson*, 5 Allen, 19. There is no evidence of any fact or circumstance in the case which tends affirmatively to show that an express trust was ever created, and there was no question for the jury on that part of the case. Even if there had been an express trust, the defendant's conduct after the termination of the partnership was equivalent to a repudiation of it which gave a cause of action.

If the right acquired by the defendant was of such a kind that a trust in favor of the firm as owners would result, by operation of law, from the payment of the consideration for it by the copartners in equal shares, it might be argued with much

force that there is no evidence of recognition by the defendant of the equitable title of the firm, inasmuch as the ownership and possession and use of the seat in the Exchange — which under the rules of the Exchange then existing could never be anything more than a privilege pertaining to the person of the member — merely enabled him better to do his duty in buying and selling stock as a member of the firm, and he only gave the firm the benefit of his personal privilege for the time being, just as in other ways he tried to promote the firm's interests.

There was evidence that the use of this privilege while the partnership continued was worth much more to the firm than the sum paid for it. But if his use of his privilege be deemed evidence of a recognition of the trust in regard to the title while the copartnership lasted, there is no evidence that he dealt with it afterwards otherwise than as his private property. There was undisputed evidence that after the failure of the firm he paid to the firm creditors who were members of the Stock Exchange twenty-five per cent more of their respective claims than other creditors received, and that this was done under a rule of the Exchange in order to retain his membership. He made this payment from his own pocket, the plaintiff not contributing nor being asked to contribute anything towards it. He also from time to time afterwards paid assessments and fines in conformity with the rules of the Exchange, and for many years occupied his seat in the Exchange for the transaction of his private business only, without recognizing any right of the firm or of the plaintiff. From 1873 to 1889 there was no communication between the parties in regard to it. Such a use of a privilege or of property to which he held the legal title must be deemed to have been under a claim of absolute right. The undisputed facts show a claim and a use adverse to the right now claimed by the plaintiff, and the jury would not have been warranted in finding that the defendant's possession and use were in recognition of an equitable right in the plaintiff. If there ever was a trust which could be enforced in equity, there can be no doubt that a cause of action for the enforcement of it arose after the termination of the partnership, as soon as the defendant began to use the

privilege solely on his own account. This right of action was barred at the expiration of six years.

It is therefore clear that long before the sale of the seat by the defendant the plaintiff's right to have it accounted for in a suit to settle the partnership affairs, or to have a trust in it declared and enforced, had been barred by lapse of time.

The plaintiff contends that a right to maintain an action for money had and received grew up on the sale of the seat by the defendant. In most jurisdictions it is the rule that the statute of limitations affects only the remedy, and does not destroy the right. It is local in its application, and a debt barred by it is not extinguished, but may be a consideration for a new promise, or may be collected if jurisdiction is obtained in another State where the statute is not in force. But, as is shown by Mr. Justice Story in *Le Roy* v. *Crowninshield*, 2 Mason, 151, 168, the loss of the means of enforcing a right leaves of the right nothing of which the law can take hold against the will of the debtor, and within the jurisdiction differs little in practical effect from the destruction of the right. It is held everywhere that adverse possession of real estate for the period prescribed in the statute of limitations not only bars a suit to recover it, but gives a good title against the former owner; and there are decisions and dicta in many courts applying the same rule to adverse possession of personal property. *Cockfield* v. *Hudson*, 1 Brev. 311. *Howell* v. *Hair*, 15 Ala. 194. *Jones* v. *Jones*, 18 Ala. 248, 253. *Clark* v. *Slaughter*, 34 Miss. 65. *Winburn* v. *Cochran*, 9 Tex. 123. *Vandever* v. *Vandever*, 3 Met. (Ky.) 137. *Ewell* v. *Tidwell*, 20 Ark. 136. *Kirkman* v. *Philips*, 7 Heisk. 222. *Preston* v. *Briggs*, 16 Vt. 124, 130. *Baker* v. *Chase*, 55 N. H. 61, 63. *Campbell* v. *Holt*, 115 U. S. 620. *Brown* v. *Parker*, 28 Wis. 21. By many of these courts it is held that there is a distinction between the statute of limitations as applied to debts, where it affects the remedy only, and as applied to a suit to recover property, where it is held to transfer the title; while by others it is decided that in all cases the statute extinguishes the right. In this Commonwealth it has been held that an owner of personal property whose right to replevy it has been barred by the statute of limitations cannot take and hold it against one who has had possession of it for more than six years, or against one to whom

it has been sold by the person who held it adversely for that length of time. *Chapin* v. *Freeland*, 142 Mass. 383. The court did not find it necessary to decide whether such a possession would work a change of title for all purposes and under all circumstances, but in holding that the remedy by peaceably taking possession is as effectually barred in this jurisdiction as the remedy by suit, and that a purchaser from one against whom the remedy is barred stands in as good a position as his vendor, they went further than is necessary for the decision of the case now before us. Under the authority of this decision, if the property had been an ordinary chattel with the title in a stranger, instead of a seat in the Stock Exchange owned by the defendant subject to a resulting trust, adverse possession for six years would have made it impossible for the owner to recover possession of it by suit, or to obtain it and hold it in any other way against the possessor, or against a purchaser from him. If the holder of such property, having a possession effectual against all the world for the protection of his right to use and dispose of it and to give a purchaser an equally good title, should sell it, professedly on his own account, how could it be said that the proceeds of it were received to the use of the former owner instead of himself? But in the present case the defendant was the owner, and could do with the property as he chose, except as he was restrained by the trust. The trust ceased to be cognizable in law or equity, and he used and sold the property as his own. Having from the beginning the legal title to the seat, the money which he got for it he received as his own, and the attempt to treat it as received to the use of the firm is an attempt to impose a trust upon the proceeds of a sale when there was no trust enforceable against the thing sold.

For this reason, as well as for others, the doctrine which has been stated in some cases, that where specific articles belonging to a firm are retained for more than six years after the dissolution of the partnership, and then sold by one of the partners, an action may be maintained by the others for money had and received, does not apply.

The defendant, in waiving the defence that the remedy should be in equity, did not waive his right to set up the statute of limitations with the same effect as if the suit were in equity, and

the case stands as if the plaintiff had sued in equity to enforce a trust against the proceeds of the sale, as he might have done.

The answer to such a suit would have been, " Your right to enforce a trust against the seat in the hands of the defendant was barred before the sale, and the change of the form of the property does not revive it. The legal title to the money is in the person who had the legal title to the seat; and you cannot avail yourself of the money as received in any part to your use except by the enforcement of the trust. Your cause of action for the enforcement of a trust against the money is the same that you had for the enforcement of a trust against the seat before it was sold, and you have lost it by lapse of time."

We are of opinion that the money was not received by the defendant to the use of the firm, and that no trust can be enforced against it.  *Judgment on the verdicts.*

MORTON, J. I regret that I am unable to agree with the opinion of the majority of the court. I think there was evidence that the seat was property which the defendant held in trust for the benefit of the firm. It was taken in the defendant's name because the firm could not be a member of the Exchange, and was ultimately paid for out of the profits of the firm equally by the plaintiff and defendant. It lacked some of the ordinary incidents of property. It could be used only by the defendant, and was not originally descendible nor assignable. A way in gross can be used only by the owner, and is not descendible nor assignable, but is nevertheless property. It was valuable because a thousand dollars was paid for it. There was always the possibility that it might be made transferable, and that the membership might be limited, just as in the case of war premiums there was always a possibility that the United States, though under no legal obligation to do so, might pay them. *Williams* v. *Heard*, 140 U. S. 529, 538. See also *Jernegan* v. *Osborn*, 155 Mass. 207. To hold that it was not property would lead to the extraordinary result that, if it had been made transferable, and the membership had been limited at any time after the termination of or perhaps during the partnership, and the defendant had sold it for the amount for which he afterwards sold it, he could have put the whole sum into his own pocket, although it

had been paid for equally by both partners, and was bought for the firm's business.

Assuming that the seat was property, the next question is whether this action is barred by the statute of limitations. The seat was sold, and the proceeds were received by the defendant in 1888. Unless, therefore, something had occurred between that date and the purchase of the seat in 1872 to take away all right of the plaintiff to a share in the proceeds, this action can be maintained.

It has been repeatedly held, both in this State and elsewhere, that the statute of limitations as to personal actions affects only the remedy, and does not extinguish the right. This proposition is supported by a great weight of authority. *Bulger* v. *Roche*, 11 Pick. 36. *Thayer* v. *Mann*, 19 Pick. 535. *Brigham* v. *Bigelow*, 12 Met. 268. *Putnam* v. *Dike*, 13 Gray, 535. *Hancock* v. *Franklin Ins. Co.* 114 Mass. 155. *Shaw* v. *Silloway*, 145 Mass. 503, 506, 507. *Jackson* v. *Holbrook*, 36 Minn. 494. *Christy* v. *Farlin*, 49 Mich. 319. *Sturges* v. *Crowninshield*, 4 Wheat. 122, 207. *Townsend* v. *Jemison*, 9 How. 407. *Michigan Insurance Bank* v. *Eldred*, 130 U. S. 693, 696. *Waltermire* v. *Westover*, 4 Kernan, 16, 20. *Grant* v. *Burr*, 54 Cal. 298. *Buckingham* v. *Ludlum*, 10 Stew. 137, 147. *Parker* v. *Grant*, 91 N. C. 338. *Goodwin* v. *Morris*, 9 Oregon, 322. *Campbell* v. *Maple*, 105 Penn. St. 304. *Jordan* v. *Jordan*, 85 Tenn. 561, 565. *Fievel* v. *Zuber*, 67 Tex. 275, 279. *Owen* v. *De Beauvoir*, 16 M. & W. 547. *De Beauvoir* v. *Owen*, 5 Exch. 166. *Dawkins* v. *Penrhyn*, 6 Ch. D. 318, and 4 App. Cas. 51. *In re Alison*, 11 Ch. D. 284. *Miller* v. *Dell*, [1891] 1 Q. B. 468.

In some States there are cases where, by express provision of the statute, the right is extinguished by the lapse of a statutory period; such are some of the cases referred to in the majority opinion. But in this State there never was any intimation that such was the effect of the statute, or that the adverse possession of personal property during the period of limitation extinguished the title of the owner, until *Chapin* v. *Freeland*, 142 Mass. 383, if that can be regarded as intimating anything of the sort. It was held invariably that the statute barred the remedy affected by it, but did no more. As observed by Mr. Langdell, "A statute giving such effect to long possession would not be a statute

for limiting the time for bringing actions, — it would be a statute relating to the acquisition of title to property." Langdell, Eq. Pl. (2d ed.) § 121. The language of the statute is, that certain actions, including contract and tort, "shall be commenced within six years next after the cause of action accrues." Pub. Sts. c. 197, § 1. What is the cause of action in this case? It is the receipt by the defendant of money from the sale of property which he held in trust for the firm; or, in other words, for the plaintiff and himself. When did the cause of action in this case accrue to the plaintiff? Clearly, not till the defendant received the money. If the seat was not property, then the defendant is not accountable. If it was property, then this cause of action did not accrue to the plaintiff until the defendant sold the seat and received the proceeds. All that was decided in *Chapin* v. *Freeland* was, that where a party could not replevy he could not take by force. "What we do decide," says the court, "is, that, where the statute would be a bar to a direct proceeding by the original owner, it cannot be defeated by indirection within the jurisdiction where it is law. If he cannot replevy, he cannot take with his own hand." The court expressly declined to consider what the effect of the statute would be in case a chattel held adversely for six years in this State were taken into another State by the originally wrongful possessor and he was there sued for it by the original owner, which must be the final test on the question whether adverse possession of a chattel for six years extinguishes the title of the original owner. If there were different periods of limitation, as there might be for replevin, trover, and assumpsit, for which should adverse possession give a title? In real actions the effect of adverse possession is different. If continued for the statutory period, it extinguishes the title of the former owner, and bars all suits by him for the recovery of his property. If the effect of the adverse possession of a chattel during some statutory period were to bar all remedies by the former owner in relation to it, (which has never been held in this State,) then it might well be that the former owner would lose his title. It is possible that what was said in *Campbell* v. *Holt*, 115 U. S. 620, was addressed to this view of the statute, especially in view of previous language of that court in *Townsend* v. *Jemison*, 9 How.

407 ; but however that may be, the court in *Campbell* v. *Holt* carefully limits the acquisition of title to personal property by adverse possession to tangible personal property. The property in this case was not of that description. It was an incorporeal right. It could not be the subject of replevin nor of trover. It is generally agreed that the statute of limitations, so far as it applies to choses in action, affects only the remedy. The seat which the defendant held in the Stock Exchange is more analogous to a chose in action than to the property which was the subject of controversy in *Chapin* v. *Freeland, ubi supra,* which were shop counters.

It is well settled, also, that one remedy may be barred and another not. The question in each case is whether the remedy that is chosen is barred. In *Lamb* v. *Clark,* 5 Pick. 193, it was conceded that trover might have been maintained for the notes, but that that action was barred. The court, nevertheless, held that the plaintiff was entitled to recover of the defendant in assumpsit money received by him on account of the notes within six years. In *Graves* v. *Dawson,* 133 Mass. 419, it was held that in an action for malicious prosecution the plaintiff could recover damages for a false imprisonment growing out of it, though an action for false imprisonment *per se* would have been barred ; the court saying that the action was not for false imprisonment, but for malicious prosecution. In *Ivey* v. *Owens,* 28 Ala. 641, it was held that assumpsit for the proceeds of property would lie, and that the cause of action accrued when the defendant received the proceeds, notwithstanding trover might have been maintained previously for conversion of the property, but was then barred. In *Kirkman* v. *Philips,* 7 Heisk. 222, it was held that, although an action for the recovery of the property itself was barred, an action for its value was not, and was not affected by the bar applying to the former. In *Wilkinson* v. *Verity,* 6 C. P. 206, it was held that the plaintiffs could sue the defendant in detinue upon his contract as bailee to deliver the plate, though years before he had sold and converted it to his own use, and an action of trover would have been barred. In the very recent case of *Miller* v. *Dell,* [1891] 1 Q. B. 468, which was trover for the conversion of a lease, it was held, following in substance the principle laid down in *Wilkinson* v. *Verity,*

that the defendant could not show that the party from whom he in good faith took the lease had converted it more than six years before the commencement of the action. See also *Gilmore* v. *Wilbur*, 12 Pick. 120; *Thayer* v. *Mann*, 19 Pick. 535; *Hancock* v. *Franklin Ins. Co.* 114 Mass. 155; *Christy* v. *Farlin*, 49 Mich. 319.

We may concede, for the purposes of this case, that a bill for an accounting of all the partnership matters would have been barred in six years from the dissolution of the firm, though it is held in *Riddle* v. *Whitehill*, 135 U. S. 621, 636, that the statute does not necessarily, as matter of law, begin to run at that date. But this is not such a case; and in *Knox* v. *Gye*, L. R. 5 H. L. 656, which is a leading case in support of that proposition, out of the four judges who gave opinions, three, including the Lord Chancellor, were evidently of opinion that an action would lie by one partner against the other for his share of a sum received by the other more than six years after the dissolution; Lord Chelmsford observing that that would be " a very different thing from a suit for an account of all the partnership transactions." So in *Zell's appeal*, 126 Penn. St. 329, a surviving partner, who more than twenty years after the dissolution unexpectedly received a large sum on account of property formerly belonging to the firm, was held liable to the heirs of the deceased partner for their share, though a bill by them for an accounting of the partnership affairs would have been barred. See also *Chouteau* v. *Barlow*, 110 U. S. 238; *Riddle* v. *Whitehill*, 135 U. S. 621; Bates on Part. § 948; 17 Am. & Eng. Encyc. of Law, 1284.

We may also concede that an action to recover money alleged to be due by reason of a resulting or constructive trust will be barred by the lapse of six years from the time when the trust arises. But no case has been referred to in which it has been held that, because an action to establish such a trust was barred, the right or interest of the *cestui que trust* in the property claimed to be subject to the trust was extinguished. It is of no consequence how strongly the alleged trustee asserts his absolute ownership. One who converts the property of another to his own use under any circumstances asserts in the strongest manner, by the act of conversion, his right to and dominion over it; but *Lamb* v. *Clark*, and the other cases cited above, show

that such a possession continued for six years will not extinguish the title of the real owner, so that he cannot sue in assumpsit for proceeds of the property received by the defendant within six years before the commencement of the action.

This case does not stand, however, altogether on the footing of a constructive or resulting trust. There was evidence on which a jury could properly have found that there was an express trust. It is well settled that an express trust in personal property may be created and shown by parol. *Childs* v. *Jordan,* 106 Mass. 321. *Davis* v. *Ney,* 125 Mass. 590. *Davis* v. *Coburn,* 128 Mass. 377. *Chace* v. *Chapin,* 130 Mass. 128. *Chase* v. *Perley,* 148 Mass. 289. *Minchin* v. *Minchin,* 157 Mass. 265. *Gilman* v. *McArdle,* 99 N. Y. 451. There was testimony tending to show that the seat was bought exclusively for the firm's business, with a part of the firm's capital, and was ultimately paid for out of the profits of the firm, — one half by the plaintiff, and one half by the defendant ; that the defendant had no business in stocks outside the firm's; that the seat had to be in the name of one of the partners, because the firm as such could not be a member of the Stock Exchange ; and that, as the defendant was well acquainted with the business and the plaintiff was not, the seat was put in the defendant's name. If, under these circumstances, the defendant had declared that he held the seat for the benefit of the firm, there can be no doubt that he would have held it upon an express trust. *Wheatley* v. *Purr,* 1 Keen, 551. See Pom. Eq. Jur. § 1008, n. 2, for collection of cases. But an express trust may be shown by circumstances as well as by express declarations. *Davis* v. *Coburn,* 128 Mass. 377. *Gadsden* v. *Whaley,* 14 S. C. 210. *Clapp* v. *Emery,* 98 Ill. 523. In *Davis* v. *Coburn* there was no direct evidence of any contract or conditions under which the money was received by the defendant. The plaintiff relied on circumstances to show the character in which the defendant held it. The court found an express trust. It would have been competent for the jury to find, in this case, that by agreement between the plaintiff and defendant the seat was taken in the name of the defendant and held by him expressly for the benefit of the firm, and for no other purpose. If the jury had found so, that would have constituted an express trust. All that is necessary to create an

express trust in personal property is some act or declaration on the part of the person or persons having ownership of and dominion over the property, manifesting plainly his or their intention that the property shall be held in trust, and the purpose or person for whom or which it shall be so held. Pom. Eq. Jur. §§ 152, 987. *Gadsden* v. *Whaley, ubi supra.* Usually an express trust is created and shown by the declarations of the settlor, or of the trustee, or of both. Whether such a trust exists is in each case a question of fact for the court or jury; and the fact may be shown by the relations of the parties, the nature and situation of the property, the objects had in view in making the disposition, and other circumstances. *Gadsden* v. *Whaley* and *Davis* v. *Coburn, ubi supra.*

If there was an express trust, then the statute of limitations would not begin to run until there was a distinct repudiation of it by the defendant, which was brought home to the plaintiff. *Davis* v. *Coburn, ubi supra.* In that case, the suit was not brought until twenty-five years after the defendant had received the money, and eighteen years after the death of the plaintiff's intestate who had sent it; and during the whole twenty-five years, with the exception of the first two or three, the defendant had treated the money as his own, and mingled it with his own funds. But it was held that the action was not barred.

The defendant in this case contends that he held the seat adversely, and as his own from the time of the dissolution of the firm; and, as bearing upon that, testifies that at the time of the dissolution the plaintiff said he was glad that the defendant had the membership left. The plaintiff denies that he said so. The firm ceased to do business in 1873. According to the plaintiff's testimony, nothing either verbal or written passed between himself and the defendant in regard to the sale or disposition of the seat from the time of its purchase down to the time of the sale of the seat by the defendant in 1888. The defendant testified that he paid fines, assessments, and an extra percentage to retain the seat. There is nothing to show that the plaintiff knew of this, or that the defendant at any time requested the plaintiff to contribute to these payments. There is testimony tending to show that for several years the defendant did substantially noth-

ing with the seat. There is nothing to show that the actual use of the seat by the defendant after the dissolution, so far as he used it at all, was in fact any different from what it had previously been. The defendant did not account for the profit made out of the seat after the dissolution. But the payment of taxes and repairs and the taking of the rents and profits by a tenant in common, who took possession originally with the consent of and by agreement with his cotenant, would not be sufficient to show an ouster by him of his cotenant without unequivocal evidence brought home to the cotenant of their subsequently adverse and exclusive character. *Ingalls* v. *Newhall*, 139 Mass. 268. If it is material to determine whether the defendant held the seat more than six years adversely to the plaintiff, under a claim of right known to the plaintiff, that is a question for the jury, as well as the question when the adverse possession began. It cannot be said, as matter of law, that the adverse possession, if there was one, began on the dissolution of the firm. If it is contended that the plaintiff has abandoned and surrendered the seat to the defendant, that also is a question for the jury, as well as when he did it. It makes no difference that the defendant sold the seat as his own, if the plaintiff did in fact have a right in it. The law holds that, in such a case, he received a portion of the proceeds to the plaintiff's use, whether he intended so to receive them or not.

It is immaterial how many other remedies have been barred if this has not, and if the effect of barring others was not to extinguish the plaintiff's right. Pollock on Torts, 178, 179. The opinion of the majority goes on the ground, as it must, that the statute, in barring an action for an accounting and an action to enforce a constructive or resulting trust, has extinguished the plaintiff's interest. I think, upon principle and authority, that the statute bar, when applied to a bill for an accounting, or to enforce such a trust, affects only the remedy, and does not extinguish the right of a partner to the proceeds of specific property belonging to the firm received by another partner within six years prior to the commencement of the action. Cases may be put of Alabama and French Spoliation claims which forcibly illustrate the injustice of any other view. If a firm owned a ship which, for some good

reason, stood in the name of one partner, and which was destroyed by the Alabama, and shortly after the firm was dissolved, nothing being said about the vessel or any claim against the United States on account of it, and if the partner in whose name it stood expended money in procuring and preserving evidence to sustain the claim and keep it alive without saying anything to the other partners, and if the United States afterwards provided for the payment of such claims, and a large sum was received by the partner on account of this claim many years after the dissolution, would it not seem that the other partners were at least entitled to have the question submitted to a jury whether they had lost, or waived, or abandoned their right to a share of the proceeds, irrespective of the fact that an action for an accounting was barred?

In the present case, if there was a trust, it has been so far performed that nothing remains but to pay the plaintiff a certain sum, and it is agreed that the determination of this action will settle the partnership affairs. There can be no objection, therefore, either on the ground of trust or partnership, to the maintenance of this action. *Johnson* v. *Johnson*, 120 Mass. 465. *Sikes* v. *Work*, 6 Gray, 433.

I think the verdicts which were directed for the defendants should be set aside, and a new trial ordered.

The Chief Justice and Mr. Justice Allen concur in this opinion.