KENNETH G. FLYNN, individually and as trustee, *vs.*
NICK HADDAD, individually and as trustee.

No. 86-735.

Suffolk. May 15, 1987. — March 22, 1988.

Present: PERRETTA, KASS, & SMITH, JJ.

*Partnership,* Dissolution, Accounting. *Uniform Partnership Act. Interest.*
*Practice, Civil,* Interest; Master: findings.

In an action for a partnership accounting, the judge correctly set a final value
on the partnership's real estate based on the only evidence of valuation
before him. [501-502]

In an action seeking an accounting of a partnership, there was no error in the
judge's ordering that one of the two partners have legal and equitable
title to certain partnership real estate, for which there was no active
market, in exchange for a $250,000 reduction in the amount that partner
was owed by the partnership. [502-503]

In an action for a partnership accounting, the judge erred in ruling that wheth-
er a partner was entitled to interest on money advanced to the partnership
was a matter of discretion with the court. [503-505]

In an action for a partnership accounting, a partner was entitled to interest on
money advanced to the partnership after its dissolution but before the
windup of its business. [505-506]

In an action seeking an accounting of a partnership, a constructive trust was
properly imposed on the partnership's real estate for the benefit of the
partnership, where one partner had recorded a deed to the property in
a bad faith attempt to take title in his own name. [506]

The bad faith conduct of a partner who attempted to take title to partnership
property in his own name did not provide a basis in equity to deny that
partner payment of interest on money he had advanced to the partnership.
[506]

Where a partner holding legal title to certain real estate subject to a construc-
tive trust for the benefit of the partnership had not insured a structure
on the property which was destroyed by a fire, the value of the structure
was properly considered a debt of that partner to the partnership upon
a final accounting. [507]

CIVIL ACTION commenced in the Superior Court on October 26, 1976.

A motion for the appointment of a receiver to sell real estate was heard by *William G. Young*, J., and the case was heard by *Elbert Tuttle*, J., on a master's report.

*James W. Stone (Daniel M. Satinsky* with him) for the plaintiff.

*Gordon L. Doerfer (Kevin E. Hulslander* with him) for the defendant.

SMITH, J. The plaintiff, Kenneth G. Flynn, individually and as trustee of Foster Realty Trust, brought an action in the Superior Court against Nick Haddad, as an individual and as trustee of Foster Realty Trust. The complaint sought, among other things, a declaration that Flynn and Haddad were joint owners, individually, of certain real estate located on Foster Road in Falmouth. The complaint also requested an accounting of the partnership. Haddad filed an answer and also set out various counterclaims. One of the counterclaims sought a declaration that Haddad was the sole owner of the Foster Road property.

A master was appointed on October 5, 1977. He conducted several evidentiary hearings extending over several months, prepared a draft report in August 1981, and, after hearing objections, filed his final report on March 24, 1982. Both parties filed objections to the final report. A Superior Court judge (trial judge) on March 3, 1983, overruled all objections and adopted the master's report.

After the master's report was adopted, the Foster Road property remained unsold. On February 2, 1986, the trial judge entered final judgment. He ordered that Haddad receive legal and equitable title to the Foster Road property. He rendered a final partnership accounting and granted judgment in favor of Flynn in the amount of $93,802. He arrived at that figure by crediting the partnership with $250,000 due from Haddad on the Foster Road property. In the final accounting the judge refused to allow interest to Haddad on advances he had made to the partnership. He also included the costs of the reconstruction of the inn located on the property as a debt Haddad owed to the partnership.

Both parties have appealed from the judgment. Flynn contends that the trial judge incorrectly determined the value of the Foster Road property and improperly gave the title to that property to Haddad. By his cross appeal Haddad challenges the trial judge's decision not to award him interest on the money he advanced to the partnership both before and after dissolution and the inclusion of the reconstruction of the inn as a debt that he owed the partnership.

We summarize portions of the master's report as background for our analysis. We shall recite additional facts from the master's report when we discuss the parties' various claims. In 1970, Flynn and Haddad agreed to purchase the Foster Road property. At that time the property consisted of a beach-front lot with a small inn on it called "The Captain's House." It contained rooms which were rented during the summer months. The purchase and sale agreement, executed on October 6, 1970, called for a purchase price of $75,000 plus a payment of $10,000 for the furnishings. The seller required the parties to pay $30,000 immediately, and he agreed to take a note for the remaining $55,000, secured by a mortgage on the property.

After the execution of the purchase and sale agreement, Flynn and Haddad formed a realty trust known as the "Foster Realty Trust" for the purpose of taking title to the Foster Road property.[1] They agreed that each would contribute $15,000 of the $30,000 cash payment and that they would share equally all expenses and all profits and losses incurred in operating and maintaining the property. Flynn had only $10,000 to contribute. Haddad agreed to put up the additional $5,000. In return, Flynn executed a $5,000 promissory note payable to Haddad. The note was dated November 5, 1970, and was payable to Haddad in or within seven months from the date of execution at an interest rate of 1.5% per month. The note provided that the interest was to be paid "semi-annually" and that, upon forty-five days' default of any payment of principal

---

[1] The declaration of trust recited that Flynn and Haddad would hold the property as trustees for the benefit of Flynn's father and Haddad's mother. The master found that the beneficiaries of the trust never had any interest in the property and that Flynn and Haddad were the actual beneficiaries.

or interest, the entire balance would become due and payable. As security for payment of the note, Flynn also executed on November 5, 1970, a quitclaim deed conveying all his right, title and interest in the Foster Road property to Haddad. An agreement was also executed on the same day reciting that Haddad had lent $5,000 to Flynn and that Haddad was authorized to record the quitclaim deed upon any default in the terms of the note.

The closing on the Foster Road property took place on November 5, 1970. Title to the property stood in the name of Flynn and Haddad, as trustees of Foster Realty Trust. The inn did not open the following summer because it was destroyed by fire on March 31, 1971. At the time of the fire there were three fire insurance policies, totaling $57,000, covering the inn. After Flynn and Haddad made various payments from the insurance proceeds, the balance ($33,245.98) was turned over to Haddad, who deposited it in the bank account of Haddad Realty Trust. Flynn and Haddad agreed that the insurance proceeds would be retained as a partnership asset, except that $5,000 was to be categorized as a return of capital to Flynn and used by Haddad to discharge Flynn's promissory note to Haddad.[2] Haddad applied the fire insurance proceeds to the satisfaction of Flynn's note. After the note was paid, Flynn demanded that Haddad return it. Haddad never did, stating that it had been lost.

After the inn was destroyed, Flynn and Haddad decided to build condominiums on the land. However, building permits were denied. They then subdivided the land into one large lot and three smaller lots. They planned to reconstruct the inn on the larger lot and build single-family homes on the smaller lots. After they had commenced construction of the inn, neighbors and the town brought separate actions in the Superior Court, claiming that the structure violated the town's zoning

[2] Flynn had made no payment on the $5,000 promissory note as of June 19, 1971, the date when the forty-five day grace period for payment of interest expired, or as of July 20, 1971, the date upon which the forty-five day grace period for payment of principal expired. As a result, the note became in default as of June 19, 1971, and July 20, 1971, for failure to pay interest and principal, respectively.

by-law. On August 21, 1972, the court found that the structure violated the by-law and ordered it torn down.[3]

The actions by the neighbors and town resulted in considerable adverse publicity about Flynn's and Haddad's business activities. As a result, Haddad decided to sever his relationship with Flynn. On October 26, 1972, he recorded the quitclaim deed to the Foster Road property which he had received from Flynn as security for his $5,000 note. The master found that the note had been discharged upon Haddad's receipt of the fire insurance proceeds. He concluded that the recording of the deed by Haddad was a bad faith attempt on his part to take title to the Foster Road property in his own name.

The master found that, as a result of the recording of the quitclaim deed, the partnership was dissolved as of the date of the recording of the deed (October 26, 1972). Although title to the Foster Road property was in Haddad's name, the master found that Haddad and Flynn had orally agreed to apply a part of the fire insurance proceeds to discharge the note. Therefore, he concluded that equitable title remained in the partnership, making Haddad's legal title to the property subject to a constructive trust for the benefit of the partnership.

We now discuss the various claims of error argued by both parties.

A. *Flynn's Claims of Error.*

1. *Valuation of the Foster Road property.* Flynn commenced his action against Haddad on October 26, 1976. After the final master's report was filed but before it was adopted, Haddad, in September 1982, filed a motion for the appointment of a receiver to oversee the appraisal and sale of the Foster Road property.[4]

On October 30, 1982, a Superior Court judge (motion judge) issued an order appointing a receiver to sell the property at pub-

---

[3] On January 6, 1976, the Supreme Judicial Court reversed the order and remanded the matter to the Superior Court for further hearings on the question whether the structure was adaptable to a lawful use. See *Building Inspector of Falmouth* v. *Haddad*, 369 Mass. 452, 459 (1976).

[4] The master, because of lack of evidence, did not make any finding as to the value of the Foster Road property.

lic auction at a price not less than the price established by a panel of three appraisers. The proceeds of the sale were to be deposited in court pending the final accounting of the partnership. After several attempts to obtain a figure from three appraisers, the motion judge issued an order on November 23, 1983, authorizing Haddad to retain the property, free of any constructive trust in favor of the former partnership between Haddad and Flynn. The motion judge also ordered that "[i]n consideration of Haddad's retention of the Foster Road property . . . , the amount owed to Haddad by the Haddad-Flynn partnership will be deemed to be reduced by the amount of two hundred fifty thousand dollars ($250,000) as of the date of entry of judgment in this action." [5]

The property remained unsold, and, when the trial judge rendered a final partnership accounting, he credited the partnership with the $250,000 valuation set by the motion judge. Flynn argues that, in adopting that figure, the trial judge either misunderstood the motion judge's order or that the motion judge incorrectly set a final value of $250,000 on the Foster Road property. He also contends that the motion judge's order "failed to produce a value that could be relied upon for partnership accounting purposes some two and a half years later." In regard to the last point, Flynn claims that the correct valuation of the Foster Road property should be as of February 6, 1986, the date that final judgment was entered, rather than as of the time the motion judge set the figure (November 23, 1983). We do not agree with Flynn's claim.

Before final judgment could be entered in this case, a final accounting had to be completed. As part of that final accounting, a value had to be placed on the Foster Road property. In view of the inability of the receiver to dispose of the Foster Road property for over thirteen months, the procedure adopted by the motion judge was sensible in the circumstances. In setting

[5] The motion judge also stated that, if during the pendency of any appeal of the action, the receiver was in receipt of an offer to purchase the property for cash, without any conditions, at a price higher than $250,000, then Haddad would have the option to meet the offered price by, in turn, agreeing to decrease by the same amount the debt due him from the partnership.

the value of the property, he apparently averaged, on a rough basis, the values estimated by two appraisers, one of whom was acting in Flynn's behalf. Under the judge's order the ultimate test would be the real estate market, if the market intervened. As a means of resolving the valuation problem, so that, in turn, the partnership might be wound up, we think the judge's approach entirely rational and anchored in the evidence. As such, it can hardly be thought to be erroneous.

The trial judge was not required to revalue the property as of the time of the final accounting. Generally, the value of the partnership assets for the purposes of a final accounting and settlement is determined as of the date of dissolution, not the date of the final accounting. *Steele* v. *Estabrook*, 232 Mass. 432, 439-441 (1919). *Chernaik* v. *Crean*, 349 Mass. 765 (1965). Application of that principle presupposes reasonably contemporaneous distribution of the partnership assets. Here, Haddad, after dissolution of the partnership and before the final accounting, held the property in constructive trust for the partnership for a considerable length of time. During that period, the property appreciated in value. In this instance, we think that the accounting must be adjusted to reflect the appreciation of the property. However, the only evidence before the trial judge of the value of the property was the valuation placed on it by the motion judge. That valuation is the closest one available to the actual date of the distribution of partnership assets. In these circumstances, the trial judge was not clearly wrong in adopting the motion judge's valuation, especially in view of the lack of any evidence by Flynn as to a different valuation.[6] We also note that Flynn undoubtedly benefited from the trial judge using the motion judge's valuation rather than a value at the date of dissolution as the property undoubtedly increased in value after that date.

2. *Title of Foster Road property to Haddad.* Flynn claims that the motion judge and the trial judge abused their discretion in ordering that Haddad have legal and equitable title to the

---

[6] Flynn does not argue that, simply because the property was being held by Haddad subject to a constructive trust, the trial judge should have fixed its value as of the date of final judgment.

property in exchange for a $250,000 reduction in the amount owed to Haddad by the partnership. Flynn argues that title to the property should be reconveyed to the partners and then sold by the partnership during the winding up phase of the partnership.

General Laws c. 108A, § 38, provides that on dissolution of a partnership each partner has the right to have "the surplus [remaining after payment of partnership liabilities] applied to pay in cash the net amount owing to the respective partners." Therefore, partners have an interest only in the cash value of whatever partnership property remains after the payment of partnership liabilities. Here, the motion and trial judges were faced with a complex problem. There was no active real estate market for the property that would readily convert the partnership asset (the Foster Road property) into cash. One reason undoubtedly for the lack of interest in the property was the cloud of litigation that hovered over the partnership for so many years. We think that it was permissible for the motion and trial judges, in order to achieve the final accounting and wind up the partnership, to allow Haddad to retain the property and give a cash payment to the partnership.

In addition, a return of the property to the partnership would cause serious problems in regard to its sale. Flynn recognized the problems in his brief, where he states, "As a practical matter, however, it would do little good to order this intermediate procedural step [conveying the property back to the partnership] . . . ."

In sum, the motion and trial judges' sensible approach to the problem was not an abuse of their discretion.

B. *Haddad's Claims of Error.*

1. *Interest on advances to partnership.* Haddad claims that the trial judge committed error when he denied his request for interest on the advances that he made to the partnership. We summarize the master's findings on this point.

In anticipation of the expenses to be incurred in the development of the property after the fire on March 31, 1971, Flynn and Haddad entered into a written agreement on December 1, 1971. The agreement, which the master found to be valid and

enforceable, concerned, among other things, interest on money lent to the partnership.[7] The master found, and the trial judge confirmed, that Haddad had made advances totaling $135,453 in aid of the partnership. The master also found that $359,676.79 interest was owed Haddad on the advances that he had made to the partnership. He refused to find that Haddad was entitled to the interest, however, stating that "there appear to be legal and equitable issues involved in awarding interest to Haddad." In that regard, the master made specific reference to the question whether Haddad's bad faith action regarding the Foster Road property, i.e., recording the deed in his name, and the resulting dissolution of the partnership stemming from that action constituted a breaking of the agreement, such that he was not entitled to interest.

The trial judge considered the question of Haddad's entitlement to interest. He found that there "appears to be no violation of the [agreement]." He ruled on the basis of "common law partnership principles" that "whether a partner is to be charged with interest in the final accounting is largely discretionary with the court and depends upon the equities of each case." He concluded that Haddad was not entitled to recover interest on his advances to the partnership because of the master's finding of his bad faith in recording the deed to the Foster Road property in his own name.

Haddad claims that the payment of interest on advances made to a partnership by a partner is not discretionary, and that

---

[7] The agreement was essentially a partnership agreement regarding Flynn and Haddad's joint purchase of certain real estate.

Paragraph seven of the agreement provided as follows:

"[A]ny and all monies expended or received by either party, either to purchase the said properties, to pay legal expenses, to pay any bills for any expenses concerning the said properties, including permits of any kind or rent, will be repaid to the party expending or owed said money together with interest at the rate of 1½% per month from the date of the initial disbursement or receipt until the date of reimbursement, either through insurance proceeds or new bank financing or otherwise."

G. L. c. 108A, § 18(c), set out in the margin,[8] requires that he receive interest.

The trial judge (and Flynn) cited several cases in support of the contention that the payment of interest is discretionary in this instance. Flynn also argues that equity requires that Haddad not receive interest on the advances that he made to the partnership after dissolution.[9]

A reading of the cases cited by the trial judge and Flynn demonstrate that they are not relevant to the question of interest presented here. *Shulkin* v. *Shulkin*, 301 Mass. 184 (1938), and *Kennedy* v. *Kennedy*, 13 Mass. App. Ct. 1036 (1982), involved the question whether a partner who draws out money from a partnership should be charged interest, not whether a partner who advances money to a partnership is entitled to interest. *Graham* v. *Street*, 2 Utah 2d 144, 151-152 (1954), and *Evans* v. *Gunnip*, 36 Del. Ch. 589, 598 (Del. Sup. Ct. 1957), did not involve interest or advances by a partner to a partnership but rather interest on the value of partnership assets being distributed to former partners. Indeed, there does not appear to be any case in Massachusetts (or elsewhere), as far as we can tell, that holds that under the Uniform Partnership Act the payment of interest on advances made by a partner to a partnership is discretionary.

We do not perceive any reason why Haddad should be denied interest on the advances that he made to the partnership after dissolution. General Laws c. 108A, § 30, provides that "[o]n dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." After

---

[8] General Laws c. 108A, § 18(c), provides:

"The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules:

"   .   .   .   .

"(c) A partner, who in aid of the partnership makes any payment or advance beyond the amount of capital which he agreed to contribute, shall be paid interest from the date of the payment or advance."

[9] At argument of this appeal, Flynn agreed that Haddad should receive interest on the advances that he made to the partnership *before* dissolution. According to figures compiled by Haddad, that interest would amount to at least $261,663.77.

the partnership was dissolved, money was advanced by Haddad for the cost of the reconstruction of the inn, which had been destroyed by the March 1971 fire. He also paid all the legal fees and costs in connection with the actions brought by the neighbors and the town of Falmouth in regard to possible violations of the town's zoning by-law by the construction of the inn by the partnership. The master found that those advances were expenses that were beneficial and therefore chargeable to the partners.

In addition, the master found that Haddad had paid all the real estate taxes on the property since 1971, all the principal and interest due on the mortgage, and all the various other labor and maintenance expenses. Again, the master found that these expenses were valid and chargeable to the partnership.

We agree with the master (and the trial judge) that Haddad recorded the deed in a bad faith attempt to take title to the partnership property. The master, as a result, chose the remedy of deeming the property to be held in a constructive trust for the benefit of the partnership. That remedy was entirely appropriate because, in the case of a partnership, "the innocent partner is to be put as nearly as possible in the same position which he would have occupied if there had been no wrongdoing, and . . . this result is accomplished by giving to him that portion of the property converted . . . ." *Shulkin* v. *Shulkin*, 301 Mass. at 193.

There is no basis to deny Haddad payment of interest, even under the general equity principle that a person seeking equity must have "clean hands." To deny relief to a party because of inequitable conduct, the conduct must directly affect the claim being brought. *Lurie* v. *Pinanski*, 215 Mass. 229, 230 (1913). The recording of the deed did not interfere with the benefits which flowed to the partnership from Haddad's advances. In fact, more than half the advances to the partnership were made before the recording of the deed (*supra*, note 9).

In sum, we hold that Haddad is entitled to receive interest on the advances that he made to the partnership before and after dissolution.

2. *The inclusion of the reconstruction costs of the inn after a second fire as a debt Haddad owed the partnership.* In September 1977, the inn was again destroyed by fire. There was no insurance on the structure. The master found that the value of the structure before the fire was $50,964 and after the fire, nothing. In addition, he found that Haddad, as constructive trustee of the Foster Road property, had a duty to insure the inn against loss by fire. As a result, the master in the final accounting offset the value of the structure to the partnership by a debt in equal amount from Haddad to the partnership.

Haddad raises various objections to the master's ultimate finding. He claims the evidence and subsidiary findings do not support the general finding that Haddad was negligent in failing to obtain insurance on the Foster Road property and that the master erroneously excluded evidence. He also argues that the master's finding that it was customary to obtain fire insurance on structures like the inn should be struck from the record on the basis of insufficient evidence and that his finding that Flynn did not have an insurable interest in the property was incorrect as a matter of law.

We have examined the record under the standard of review outlined in *Pollock* v. *Marshall*, 391 Mass. 543, 554-555 (1984). We find no error in the master's findings, conclusions of law, or in his rulings in regard to the admissibility of evidence.

The judgment of the Superior Court is modified insofar as it denied Haddad interest on advances that he made to the partnership and is affirmed in all other respects. The case is remanded to the Superior Court in order to calculate the interest due Haddad on his advances.

*So ordered.*