FRANK DICARLO, JR., & another,[1] executors,[2] *vs.* ROSARIO L. LATTUCA, executor.[3]

No. 02-P-500.

Middlesex. November 6, 2003. - January 15, 2004.

Present: GREENBERG, BERRY, & McHUGH, JJ.

*Partnership,* Dissolution, Accounting. *Laches. Limitations, Statute of. Trust,* Resulting trust.

This court concluded that the six-year statute of limitations barred the estate of a partner who had died eleven years prior to the commencement of an action for a partnership accounting from bringing such an action, because the limitations period began to run when the partnership dissolved upon the death of the partner, not when the partnership wound up its affairs. [346-350]

CIVIL ACTION commenced in the Superior Court Department on February 18, 1988.

The case was heard by *Margot Botsford,* J.

*Gary S. Matsko* for the defendant.

*Leon M. Fox* for the plaintiffs.

McHUGH, J. Francis DiCarlo (Frank) and Alba Lattuca (Lattuca) were partners in a real estate venture from 1964 until Frank's death in 1977. In 1988, about a year after Lattuca died, Wayne R. DiCarlo (Wayne) and Frank DiCarlo, Jr. (Frank, Jr.), Frank's sons and executors, brought suit against Lattuca's estate for a partnership accounting. After a trial without a jury, a judge of the Superior Court provided the accounting accompanied by findings of fact and conclusions of law. Lattuca's estate appeals from the resulting judgment, claiming that the complaint was barred by the statute of limitations or by laches and that, in any

---

[1] Wayne R. DiCarlo.

[2] Of the estate of Francis DiCarlo.

[3] Of the estate of Alba M. Lattuca.

event, the trial judge failed to award appropriate interest on money Lattuca had advanced to the partnership. We need not reach Lattuca's interest argument because we conclude that the action was barred by the statute of limitations.

Neither party challenges the judge's careful and thorough factual findings, many of which, although essential to a proper accounting, do not bear on the issues this appeal involves. We focus, therefore, on facts pertinent to our present task. In 1963 or 1964, Frank and Lattuca, who were long-time friends, formed a partnership to buy and develop a series of contiguous parcels in Maynard. Although they never reduced their agreement to writing, their arrangements contemplated that they were to share equally in the venture's profits and expenses. Lattuca, a licensed real estate broker, was to be responsible for marketing and sales and Frank was to do the necessary construction work. To carry out their plan, they formed a corporation in which they both held an interest.

The corporation began to purchase property in January of 1964 and continued to do so until 1971, by which time it owned four parcels as well as an option on a fifth. Unfortunately, drainage and frontage problems stifled the partners' development plans. Consequently, the corporation still owned each of the parcels when Frank died in 1977. From 1980 through the end of 1984, Lattuca sold the parcels and paid all outstanding mortgages. She kept the net sale proceeds.

Frank's son Wayne, a lawyer, knew Lattuca well. Indeed, Wayne had from time to time represented Frank, Lattuca, and the partnership in connection with partnership activity, although he had charged the partnership nothing for doing so. In 1978 or 1979, a year or two after Frank's death, Lattuca gave Wayne a packet of partnership documents. Sometime later, Lattuca disposed of all remaining partnership documents for what the judge found were wholly innocent reasons unrelated to any desire to prevent their inspection by Wayne or by others. As a result, the documents Lattuca had given Wayne were the only partnership documents that remained by the time of trial.

In 1985, about eight years after Frank died, Wayne raised with Lattuca the possibility of preparing a partnership accounting. No accounting resulted. During that year, however,

Lattuca paid $10,000 to Frank's widow, a payment the trial judge found to have been a distribution of partnership funds. That was the only distribution Lattuca made before her death in February of 1987.

Shortly after Lattuca died, Wayne contacted the executor of her estate about an accounting. The executor told Wayne that he had no partnership records and could not or would not perform an accounting. Wayne did not tell the executor that he had the documents Lattuca had given him in the late 1970's. The executor later hardened his position by telling Wayne that Frank had had no interest in any of the Maynard properties and, as a consequence, no accounting was necessary. On February 18, 1988, about eleven years after Frank's death and a year after Lattuca's, Wayne and Frank, Jr., commenced this action.

In answering the complaint, Lattuca's estate asserted the affirmative defenses of laches and the statute of limitations.[4] By way of a pretrial motion, Lattuca's estate sought a judgment of dismissal on those grounds. The trial judge denied the motion, ruling that "the statute of limitations [for a partnership accounting] begins to run when the partnership winds up its affairs." She also found that the partnership did not complete winding up its affairs until June of 1982, that the six-year statute of limitations contained in G. L. c. 260, § 2, was applicable — a conclusion no one disputes[5] — and that the action, therefore, had been commenced seasonably.

We disagree. Partnerships in Massachusetts, as in many other States, are governed by the Uniform Partnership Act (UPA), G. L. c. 108A, §§ 1 et seq. As set forth in G. L. c. 108A, § 43,

---

[4]In asserting the statute of limitations, the answer specifically focused on the provisions of G. L. c. 197, § 9, as amended through St. 1979, c. 546, § 5, although it expressly did so without limitation. Chapter 197, § 9, governs the time within which one must file a suit against an estate. The judge found that this action was commenced within the time § 9 required, a finding with which Lattuca's estate does not quarrel here.

[5]General Laws c. 260, § 2, contains the statute of limitations for actions on contracts. Because partnerships can only arise through an express or implied contract, that six-year statute of limitations consistently has been applied to actions for partnership accountings. See *Currier* v. *Studley*, 159 Mass. 17, 28 (1893); *McMahon* v. *Brown*, 219 Mass. 23, 27-28 (1914), citing Rev. L. c. 202, § 2, the predecessor of G. L. c. 260, § 2.

"[t]he right to an account of his interest shall accrue to any partner, or his legal representative, as against the winding up partners or the surviving partners or the person or partnership continuing the business, at the date of dissolution, in the absence of any agreement to the contrary."

"[D]issolution . . . is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business[,]" G. L. c. 108A, § 29, and dissolution occurs, inter alia, when a partner dies. G. L. c. 108A, § 31(4). Upon "dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." G. L. c. 108A, § 30. Until partnership affairs are wound up and a distribution is made, the deceased's partner's right in partnership property "vests in the surviving partner . . . [who] has no right to possess the partnership property for any but a partnership purpose." G. L. c. 108A, § 25(2)(d).

The quoted provisions of the UPA show that the right to an accounting accrues upon the partnership's dissolution even by death and even as the steps necessary to wind up the partnership's affairs are proceeding.[6] Moreover, whatever the law may have been elsewhere, see generally Annot., When Statute of Limitations Commences to Run on Right of Partnership Accounting, 44 A.L.R.4th 678 (1986), that has always been the law of Massachusetts. Before adoption of the UPA, death dissolved a Massachusetts partnership. See *Wolbach* v. *Commissioner of Corps. & Taxn.*, 268 Mass. 365, 368 (1929). Dissolution, in turn, produced the right to an accounting and, with that right, commencement of the period within which it could be exercised. As the Supreme Judicial Court explained,

"It is well settled that suits between partners to obtain an account and settlement of the affairs of the partnership are subject to the statute of limitations. It is a general rule in

---

[6]"Generally, the value of the partnership assets for the purposes of a final accounting and settlement is determined as of the date of dissolution, not the date of the final accounting." *Flynn* v. *Haddad*, 25 Mass. App. Ct. 496, 502 (1988). That rule, however, is not ironclad and, if the winding up does not proceed expeditiously, departures from the rule may be appropriate. *Id.* at 502-503. See *Meehan* v. *Shaughnessy*, 404 Mass. 419, 429-430 (1989).

such cases that, in the absence of an express contract in regard to the matter, or of conduct of the parties which works an extension of the time for bringing a suit, the statute begins to run at the date of the dissolution."

*Currier* v. *Studley*, 159 Mass. 17, 19 (1893). Accord *Eddy* v. *Fogg*, 192 Mass. 543, 546 (1906); *McMahon* v. *Brown*, 219 Mass. 23, 27-28 (1914). The UPA, as interpreted in other jurisdictions, produces the same result. See *Estate of Peebles*, 27 Cal. App. 3d 163, 168-169 (1972); *Estate of Krevchena*, 244 Ill. App. 3d 160, 163-164 (1993). See generally *Peterson* v. *Teodosio*, 34 Ohio St. 2d 161, 165-167 (1973); Riggan *vs.* Askew, No. 02A01-9511-CH-00246 (Tenn. Ct. App. Oct. 29, 1997); *Taplett* v. *Khela*, 60 Wash. App. 751, 755 (1991). Contrast *Warren* v. *Chapman*, 535 A.2d 856, 859-860 (D.C. App. 1987).

Faced with those principles, the plaintiffs proffer four arguments in an effort to avoid the statutory bar. First, they suggest that there was no partnership. But the trial judge concluded, clearly and unequivocally, that there was, and her conclusion rests on factual findings entirely adequate to support it. The plaintiffs make no claim that those factual findings were clearly erroneous. See *Recore* v. *Conway*, 59 Mass. App. Ct. 1, 5 (2003); *Interstate Gourmet Coffee Roasters, Inc.* v. *Seaco Ins. Co.*, 59 Mass. App. Ct. 78, 81-82 (2003).

The plaintiffs next say that Lattuca's estate asserted a counterclaim for an accounting and, by doing so, waived the statute of limitations even though the estate's answer specifically pleaded that defense. But the Massachusetts Rules of Civil Procedure contemplate pleading in the alternative, Mass.R. Civ.P. 8(e), 365 Mass. 749 (1974), and, thus, permit one to assert contingently a counterclaim for an accounting without waiving an affirmative defense that the statute of limitations bars a claim of that type. See *Taplett*, 60 Wash. App. at 760.

For their third argument, the plaintiffs turn to the law of trusts. A resulting trust, they contend, was formed both when Lattuca purchased one of the pieces of property the partnership held and when Lattuca received the proceeds of property sales after Frank died. That being the case, the plaintiffs continue, no claim arose until the executor of Lattuca's estate refused to pay Frank's estate its proportionate share of the trust corpus. See

generally *Brodeur* v. *American Rexoil Heating Fuel Co.*, 13 Mass. App. Ct. 939, 940-941 (1982).

The trial judge, however, correctly found that there was no resulting trust. "A resulting trust typically arises when a transfer of property is made to one person and the purchase price is paid by another; in such a case a trust results in favor of the person who furnished the consideration." *Meskell* v. *Meskell,* 355 Mass. 148, 150 (1969). Here, there was no evidence that Frank furnished the consideration for any partnership purchase, see *Nessralla* v. *Peck,* 403 Mass. 757, 763 (1989), and, as the quoted formulation reveals, no resulting trust sprang from the property sales.

Finally, the plaintiffs claim that, whenever the statute of limitations began to run, running was tolled and began to run anew when, as the judge found, Lattuca paid Frank's widow $10,000 in 1985. The 1985 payment, the plaintiffs argue, was a partial payment of Frank's partnership share and, as such, had the tolling effect.[7] See *Alpert* v. *Radner,* 293 Mass. 109, 111 (1936); *Our Lady of the Sea Corp.* v. *Borges,* 40 Mass. App. Ct. 484, 491-492 (1996); *Lumbermens Mut. Cas. Co.* v. *Y.C.N. Transp. Co.,* 46 Mass. App. Ct. 209, 215 (1999).

The problem, however, is that the

> "theory upon which it has been held that a part payment will take an indebtedness out of the operation of the statute of limitations is that such payment is an acknowledgment that an indebtedness exists and, from the payment, the law implies a new promise to pay the balance. But in order to have this effect the circumstances attending the part pay-ment must be such as to support a fair and reasonable inference that the debtor intended to renew his promise of payment. [The judge made no findings to that effect and there] is nothing upon this record that will warrant such an inference."

---

[7]Nothing in the trial judge's decision or in the record appendix suggests that this argument was made to the trial judge. We nevertheless consider the argument because "[a] judgment which is correct on the facts will be upheld even though the stated ground for the judgment is unsound." *West Broadway Task Force* v. *Boston Hous. Authy.,* 414 Mass. 394, 398 (1993), citing *Greeley* v. *Zoning Bd. of Appeals of Framingham,* 350 Mass. 549, 551 (1966).

*Provident Inst. for Sav.* v. *Merrill,* 311 Mass. 168, 171 (1942). See *Kelly* v. *McIntyre,* 323 Mass. 313, 315 (1948). Indeed, insofar as the record is concerned, the only evidence regarding the reason for Lattuca's payment produces precisely the opposite inference.

*Judgment reversed.*